In the Matter of the Petition of CLARA H. VAN GORDEN, as Surviving Executrix, etc., of J. MELVIN SAMSON, Deceased, and as Executrix, etc., of EMMA C. KNIGHT, Deceased, for a Determination as to. the Construction or Effect of the Disposition of Property Contained in the Last Will and Testament of J. MELVIN SAMSON, Deceased.

JAMES M. POOLE and Others, Appellants; CLARA H. VAN GORDEN, Individually and as Surviving Executrix, etc., of J. MELVIN SAMSON, Deceased, and as Executrix, etc., of EMMA C. KNIGHT, Deceased, Respondent.

Third Department, June 30, 1931.

*Jenkins, Deyo & Hitchcock* [*Israel T. Deyo* of counsel], for the appellants.

*Lusk, Buck, Ames & Coon* [*Clayton R. Lusk* of counsel], for the respondent.

VAN KIRK, P. J. J. Melvin Samson died April 1, 1929. For the purpose of this proceeding, his estate is to be distributed as though he had died intestate. The only question is: what share does each of the next of kin take? The statute which applies is that which existed in April, 1929; the amendment of 1929, chapter 229, which took effect September 1, 1930, does not apply.

The next of kin of the intestate were two nieces, who are the daughters of a deceased sister, and eight grandnephews and grand-nieces, who are the children of a deceased nephew and two deceased nieces, who in turn were the children of a deceased brother. The surrogate has held that the estate should be divided into two shares, one share going to the two nieces and the other share to the eight grandnephews and grandnieces. He makes this decision under subdivision 5 of section 98 of the Decedent Estate Law, which reads as follows: " If there be no widow, and no children, and no representatives of a child, the whole surplus shall be distributed to the next of kin, in equal degree to the deceased, and their legal representatives; and if all the brothers and sisters of the intestate be living, the whole surplus shall be distributed to them; if any of them be living and any be dead, to the brothers and sisters living, and the descendants in whatever degree of those dead; so that to each living brother or sister shall be distributed such share as would have been distributed to him or her if all the brothers and sisters of the intestate who shall have died leaving issue had been living, and so that there shall be distributed to such descendants in whatever degree, collectively, the share which

their parent would have received if living; and the same rule shall prevail as to all direct lineal descendants of every brother and sister of the intestate whenever such descendants are of unequal degrees." It is the last clause of this subdivision which was determinative in the mind of the surrogate. He holds that the words " the same rule shall prevail " mean that we must go back to the deceased brother and sister to determine the " stock " and distribute from these dead *per stirpes*. This is distinctly a new rule of construction of the statute. Prior to this there has been an old rule under which it has uniformly been held that this clause means that the shares of nephews and nieces and of grandnephews and grandnieces shall be determined under the same rule which the statute applies to determine the shares of brothers and sisters when some are living and some dead leaving issue, namely, that the estate shall be divided into the aggregate number of shares represented by the living nephews and nieces and those nephews and nieces who have died leaving issue. So that the nephews and nieces take directly and equally, that is *per capita;* the grandnephews and grandnieces take *per stirpes* the shares their parents would have taken if living. This is " the same rule " applied in the preceding part of the subdivision in case of brothers and sisters. This seems quite evident from the limiting words in that clause, " Whenever such descendants are of unequal degrees." Because where nephews and nieces are the only next of kin, they are " all in equal degree to the deceased " and " their shares shall be equal." (Subd. 10.) So if one deceased brother left one child and another left six children, the one child could not take one-half and the six but one-twelfth each. Those seven nephews and nieces take equally. The number of deceased brothers and sisters would not in such case determine the number of shares. The new construction occasions this curious result. If all the nephews and nieces survive they take equally, that is *per capita;* but if some survive and some have died leaving issue, the survivors must lose their *per capita* right and are required to take *per stirpes*.

The old rule is supported by the authorities so far as we have been able to find them. It was so directly held in *Matter of Prote* (54 Misc. 495; affd., on the opinion of the surrogate, 133 App. Div. 928) and in *Matter of De Voe* (107 id. 245; affd., 185 N. Y. 536); so also in *Matter of Ebbets* (43 Misc. 575), which is the *De Voe* case under another name; so also in *Matter of Farmers' Loan & Trust Co.* (68 Misc. 279, 282), decided on the authority of *Matter of Prote*. (See *Matter of Butterfield*, 211 N. Y. 395.) In Jessup-Redfield Law and Practice in Surrogates' Courts, 1925 edition, on page 1688, it is said: " The statute provides that, when descendants and next

of kin are of unequal degrees of kindred, the surplus is to be apportioned among those entitled thereto, according to their respective stocks, so that those who take in their own right shall receive equal shares, and those who take by representation shall receive the share to which the parent, whom they represent, if living, would have been entitled." There can be no question but in this case the nieces take in their own right directly, not *per stirpes*, from the intestate. (Dec. Est. Law, § 98, subd. 10.) In the same work, pages 1692 to 1697, the author sets forth schedules of the shares of collaterals. On page 1695 is this: Where the collaterals are " nephews or nieces, and grandnephews or nieces, children of predeceased brothers or sisters " the distribution is to be the " whole to nephews and nieces *per capita*, and to grand-nephews and nieces *per stirpes*." This work and previous issues thereof have been recognized authority followed by surrogates throughout the State for many years.

The statute, section 98, fully justifies the old rule. All subdivisions must be read together. The first sentence of subdivision 5 above quoted declares that " the whole surplus shall be distributed to the next of kin, in equal degree to the deceased, and their legal representatives." None else can take a share in the estate. (*Adee* v. *Campbell*, 79 N. Y. 52.) Subdivision 10 reads: " Where the descendants, or next of kin of the deceased, entitled to share in his estate, are all in equal degree to the deceased, their shares shall be equal." They take *per capita*. Subdivision 11 provides: " When such descendants or next of kin are of unequal degrees of kindred, the surplus shall be apportioned among those entitled thereto, according to their respective stocks; so that those who take in their own right shall receive equal shares, and those who take by representation shall receive the share to which the parent whom they represent, if living, would have been entitled." Thus we are again instructed that, where nephews and nieces are the next of kin, they take directly in their own right. Those two subdivisions declare the same rule of distribution among nephews and nieces and grandnephews and grandnieces as is set forth in the quotation from Jessup-Redfield, *supra*, and is upheld in the authorities. We cannot understand how section 98 is susceptible of another construction.

The surrogate has been impressed by the words in subdivision 11 " according to their respective stocks " and quotes from *Luhrs* v. *Eimer* (80 N. Y. 171, 179) the following words: " The brothers and sisters are respectively stocks of descent." This he thinks justifies him in holding that the brothers and sisters of the intestate determine in the instant case the " respective stocks." Of course

in that case the brothers and sisters were respective stocks. But in another case there may be other " respective stocks." The nephews and nieces are in this case respective stocks. This quoted expression was used by the Court of Appeals in a case, involving the descent of real estate, where the father was an alien and could not take. The son died intestate, leaving brothers who could take. The court said: " The brothers and sisters take — not, however, through the father, but immediately from the decedent," and then said, " The brothers and sisters are respectively stocks of descent." The same is true of the next of kin in this case; they take directly from the intestate and not through their parents. They are respective stocks. The word " stock " signifies in law that person from whom a family is descended and also kindred or family (Bouvier Law Dict.); " the race or line of a family; the progenitor of a family and his direct descendants " (Webster New Internat. Dict.). The " respective stocks " are determined by the nearest kin surviving.

There is further support for the old rule. The law declares representation among collaterals to be on the same footing as to real and personal property. (*Matter of De Voe, supra,* 246; *Matter of Butterfield, supra,* 395, 402, 403.) Heirs are the kindred in whom the real property of an intestate vests by operation of law upon his death; it never vests in deceased kindred, however near. (*Tillman v. Davis,* 95 N. Y. 17, 24; *Riggs v. Palmer,* 115 id. 506.) In McKinney's Consolidated Laws of New York under section 87 of the Decedent Estate Law, which declares the line of descent of real estate, the same authorities are cited as under section 98 in respect to the shares of nephews and nieces and their descendants. Under neither of these sections is an authority cited which supports the new rule which the surrogate has adopted. The surrogate seems to think that the two living nieces do not take in their own right, but take by representation. This, we think, is contrary to every authority. (See *Matter of Butterfield, supra.*) The surrogate disregards subdivision 10 (*supra*), but cites no authority for his position. We think the statute is a command and should be obeyed. The construction adopted by the surrogate is without precedent and contrary to the unbroken line of authorities under which the estates of intestates have been distributed for many years. We have not had our attention called to, ·nor have we found, a single authority supporting his position. If it is said that, under the amended statutes a new rule is provided and, therefore, it is unimportant to maintain the old rule, the answer seems to be plain that the parties hereto are entitled to have their

rights under the law as it existed when the intestate died, even though their values are not great.

The decree of the surrogate construing the will of the deceased should be reversed, with costs to the appellants payable out of the estate, and the case remitted to the surrogate with instructions to distribute the estate in the following manner: Divide the estate into five equal shares; to each of the two nieces give one share, and to the grandnephews and grandnieces distribute the other three shares *per stirpes*.

All concur, except HINMAN, J., who dissents and votes to affirm on the opinion of the surrogate (139 Misc. 490).

Decree construing the will reversed on the law, with costs to the appellants payable out of the estate, and matter remitted to surrogate, with directions to distribute in accordance with the opinion.