Roy M. Page, S.
The testatrix, Tressa H. Butts, died December 13,1890. The person she named in her will as “ my adopted daughter Iona ” (never legally adopted), who was constituted as the legal life tenant of all the estate of said testatrix, survived her. The said Iona, her full name at her death being Iona May Butts Sherwood Storms (hereinafter referred to as Iona), died on the 29th day of December, 1954, leaving her surviving one child, a daughter named Nellie Pierson.
The last will and testament of said Tressa H. Butts, deceased, was duly admitted to probate in Broome County Surrogate’s Court on March 30, 1891, and letters testamentary thereupon duly issued to George Sherwood, the person nominated as executor in the will. The said executor brought a proceeding for his accounting as such executor and a decree therein was entered on the 17th day of May, 1894. Although, as is very apparent from reading the hereinafter quoted provision in relation to her interest, this provision of the will in favor of Iona consists of a legal life estate and not any trust. Nevertheless, the decree on the judicial settlement of the account of the executor in 1894 directed the said executor to turn over to himself as trustee under the last will and testament all of the assets of the estate. It, therefore, appears that, beginning with said alleged trustee and throughout a succession of successors, the legal life estate has been denominated, acquiesced in and treated by everyone concerned with it, including Iona, as if it had been a trust.
As to the issue of construction, we are concerned herein only with an unnumbered paragraph contained in the will reading as follows: “ I give, devise and bequeath to my adopted daughter Iona, all my property, both real and personal, for her full use during her natural lifetime. If she should die without issue, then the entire real and personal property remaining, *432 shall revert to and be equally divided between my nearest of kin, but if the said Iona should leave heir or heirs at her decease, one half of all the property shall go to them, and the other half (shall go) to my legal heirs as above named or mentioned.” (Italics and parenthesized words supplied.)
As to one half of the remainder, the succession is entirely clear. Iona left one daughter, Nellie Pierson, and, of course, she takes that.
As to the other half, a construction of the quoted paragraph is required. There are two questions which must be resolved. The first is as to the time of vesting and the second is as to whom.
Reading the above-quoted paragraph of the will, in relation to the devolution of the remainder after the legal life estate, shows that the gift thereof was to no named person, but to a class consisting of the testatrix’ (as of the time of death of Iona) “ nearest of kin”, or, if Iona left “heirs”, (probably meaning issue) then to each of two classes, neither determinable until the termination of the intervening life estate. (Gilliam v. Guaranty Trust Co., 186 N. Y. 127.)
This, in and of itself, indicates that the answer to question No. 1 must be that vesting of the remainder did not occur until the death of the life tenant. In addition, all the other judicially established criteria for resolving such ambiguities as abound in the above-quoted paragraph, caused by inexpert draftsmanship, support the same conclusion. As to the remainder, there are no words of present- gift but, on the contrary, words (“revert” and “shall go”) denoting an annexation of the concept of futurity to the gift. (Matter of Baer, 147 N. Y. 348, 354.) Moreover, indicating the applicability of the “ divide and pay over ” rule, this testamentary provision contains a direction that, following the death of the life tenant, the remainder here in question be “ equally divided between my nearest of kin.” (Smith v. Edwards, 88 N. Y. 92.) The conclusion follows that, in this case, the future interest did not change from a contingent or contingently vested to a vested interest until the death of the life tenant. (Matter of Bostwick, 236 N. Y. 242.)
Somewhat greater difficulty is presented in relation to finding the answer as to the vesting in whom question. As of the date of death of the life tenant and, thereupon, the vesting of the remainder, the heirs at law and next of kin (distributees) of the testatrix were descendants of Angela Capron Mix, a sister of the testatrix who had predeceased her but who left issue (testatrix’ two nieces and one nephew) surviving both their *433 mother (Angela) and the testatrix. (The testatrix had another sister, Mary Jane Hoadley, who also left issue surviving both herself and the testatrix but which line of descendants had become extinct previous to the date of death of the life tenant.)
At the date of death of the life tenant, the lineage of her sister, Angela Capron Mix, consisted of a surviving daughter, Grace M. Herrick, and descendants of another daughter, Minnie E. Mix Wasson, and of a son, John C. Mix, both of whom had predeceased the life tenant. The descendants of Minnie consisted of her three children (grandchildren of Angela and grandnieces and grandnephew of the testatrix), Dorothy Mix Wasson, Alice G. Daniels and Donald B. Wasson. As to progeny of Angela’s son, John C. Mix, they consisted of a son, David Mix, who survived the life tenant, and a daughter, Margaret Mix Parke, who predeceased the life tenant, but left surviving her three children, Anne Parke, John Parke and William Parke, great-grandchildren of Angela and great-grandniece and great-grandnephews of the testatrix.
From the foregoing exposition of the family genealogy running back to the testatrix’ sister, Angela, it is apparent that the nearest of kin of the testatrix as of the date of death of the life tenant was solely her niece, Grace M. Herrick. In order that any of the others may be recognized as having succeeded to any interest in the present remainder, they must have done so in accordance with the application of the principle or representation as exemplified in all per stirpital successions.
The most pertinent New York cases on this subject appear to be as follows:
Haas v. Speenburgh (122 Misc. 458, affd. 212 App. Div. 844) which is a case decided by Judge Staley in 1924, in which the words “ nearest kin ” were, citing 10 cases from other States, determined to mean just what it says, with the effect that the relative in that case who stood in the closest consanguinous relationship took to the exclusion of others of a lesser degree.
Matter of Martin (255 N. Y. 248) is a case that came before the Court of Appeals in 1931. In that case, under very similar circumstances, the words to be construed were “ to go to my nearest relatives ”. The dispute was between the testator’s surviving brother on one side and numerous nephews and nieces on the other. The court held in favor of the brother to the exclusion of the nephews and nieces, quoting from Matter of Weaver (140 Iowa 615); “No relative can be said to be ‘ nearest ’ in degree of blood if someone else be ‘ nearer. ’ ”
On the basis of these authorities, it would clearly appear that *434 the surviving niece, Grace M. Herrick, would now succeed to the one half of the remainder not going to the child of Iona, the life tenant.
However, there is a later authority, of which cognizance must be taken. This is Matter of Burk (298 N. Y. 450 [1949]). In this case, involving relatives of varying degrees of consanguinity, there was a testamentary provision to be construed in which the testator had incorporated in his will a direction to “ pay and distribute * * * half of all my said estate unto the nearest of kin of my wife in equal shares.” In this case, Surrogate Taylor, of Orange County, in effect, had held that “ nearest of kin ” must be taken to be the same as if the wording had been “ next of kin ”, a well defined expression of art connoting distribution in accordance with the statute governing intestacies, resulting, under the facts of that case, in a per stirpital distribution. (Matter of Burk, 190 Misc. 931.) On appeal, to the Appellate Division, (273 App. Div. 1012) the decree of the Surrogate was unanimously reversed on the authority of Matter of Martin (supra) and Haas v. Speenburgh, (supra) with the result that a sister of the testator, being of closest consanguinous relationship to him, would have, if there had been no further appeal, taken all, to the exclusion of nephews and nieces. On appeal to the Court of Appeals (298 N. Y. 450, supra), that court, alleging the situation to be distinguishable from Matter of Martin, unanimously reversed the Appellate Division and reinstated the decree of the Surrogate.
In this case, the Court of Appeals did not expressly state what consideration, if any, it gave to the testator’s direction for an equal distribution. It would seem that this would require a per capita and not a per stirpital basis of distribution. But, since no clarification of the court’s view on this particular question is apparent, the best conjecture would be that, if any consideration at all was given to the presence of this qualifying term, it was regarded as having been sufficiently recognized in that, as would be true in any case involving the principle of representation, there would be an equal distribution among the several groups of descendants as in any case of intestate succession wherein there would be a taking by way of representation.
The present case is, in respect to its legal aspects, identical with Matter of Burk (supra), and, on this authority, must be, and I do decide it, to the effect that the presently to be determined distribution of the remainder here in question must be on the basis of embracing all of the relatives of the testatrix, consisting of niece, grandnieces and grandnephews, and great-grandniece and great-grandnephews, as above set forth, who *435 were living at the date of death of the life tenant and, under the authority of Matter of Burk, shares in the remainder here in question devolve accordingly as if the testatrix had expressly provided that the distribution should be per stirpes among those who would be her next of kin as of the date of death of the life tenant.
Remembering that the present construction deals with only one half of the remainder (the other half having passed to Iona’s child), the respective fractional interests in the one half of the remainder here in question is as follows: Grace M. Herrick, niece, one third; Dorothy Mix Wasson, grandniece, one ninth; Alice G. Daniels, grandniece, one ninth; Donald B. Wasson, grandnephew, one ninth; David Mix, grandnephew, one sixth; Anne Parke, great-grandniece, one eighteenth; John Parke, great-grandnephew, one eighteenth, and William Parke, great-grandnephew, one eighteenth.
Submit decree accordingly.