Maximilian Moss, S.
The decedent died testate on May 21, 1958, leaving a will dated January 13, 1949, wherein she gave everything to a brother. He predeceased her without issue, and therefore the testatrix in effect died intestate. The decedent’s distributees her surviving were (1) a niece, who is the accountant and the only child of another predeceased brother; and (2) the issue of a predeceased sister, composed of four nephews, a niece, and six grandnieces and grandnephews who are the children of a predeceased niece. The accountant challenges the applicability of the equitable rule of equality of distribution to *851 nieces and nephews when they are in the nearest degree of relationship to an intestate decedent, and seeks to distribute one half of the estate to herself.
In the court’s opinion, the statutes controlling distribution to be made herein are subdivisions 6 and 9 of section 83 of the Decedent Estate Law. Subdivision 6 is the primary source specifying distribution in the fact situation here present. It originally provided that the property of an intestate decedent who dies without a “ surviving spouse, and no children, and no representatives of a child, and no parent, the whole shall descend and be distributed to the next of kin in equal degrees to the deceased; and if all the brothers and sisters of the intestate be living, the whole shall descend and be distributed to them; if any of them be living and any be dead, per stirpes to the brothers and sisters living, and the descendants in whatever degree of those dead ”. (Emphasis supplied.)
Those provisions were enacted into law by section 6 of chapter 229 of the Laws of 1929, effective September 1, 1930. The general purpose was to harmonize the law with respect to the descent of realty and the distribution of personalty (N. Y. Legis. Doc., 1930, No. 69, p. 107). Subdivision 6 had its origin in former section 87 and subdivision 5 of section 98 of the Decedent Estate Law; the former covering the descent of realty, and the latter, the distribution of personalty. They were adopted, with the exception of minor changes made necessary by the grouping of the two forms of property, into the quoted provisions of subdivision 6 of section 83. There was also included therein, however, the words “ per stirpes ” which the accountant insists effected a change in the then existing method of distribution. The Commission to Investigate Defects in the Laws of Estates, known as the Foley Commission, at page 167 of the aforesaid legislative document, made this observation with respect to subdivision 6: “ (Note: Section 98, subd. 5, amended so as to include real property; the language is simplified; section 87 combined herein; it is intended to continue the method of distribution of personalty, and to make such method applicable to the descent of real property, as further provided by new section 81 hereof; this subdivision corrects present subdivision 5 by inserting 1 and no parent, ’ as provided by present subds. 6 to 7-a, by amendment of 1921)”.
Before subdivision 6 of section 83, as set forth above, became effective, the Legislature added thereto by chapter 599 of the Laws of 1930, likewise effective September 1, 1930, the following provisions: “ so that to each living brother or sister shall descend or be distributed such share as would have descended *852 or been distributed to him or her if all the brothers and sisters of the intestate who shall have died leaving issue had been living, and so that there shall be distributed to such descendants in whatever degree, collectively, the share which their parent would have received if living; and the same rule shall prevail as to all direct lineal descendants of every brother and sister of the intestate whenever such descendants are of unequal degrees.” Those provisions were likewise taken almost intact from former section 87 and subdivision 5 of section 98 of the Decedent Estate Law. At pages 303 and 304 of the Combined Reports of Decedent Estate Commission (Reprint) is appended the commission’s note with respect to the reasons for the aforesaid amendments. The commission explicitly stated that no change was made in equality of distribution where all the brothers and sisters were living, nor in per stirpital distribution where some of the brothers and sisters were living, and some were dead but their descendants survived.
The commission then stated (p. 304) that “Under the law prior to the taking effect of Chapter 229 of the Laws of 1929, where all of the brothers and sisters were dead, but descendants of deceased brothers and sisters survived, distribution is to them per stirpes * * * No change was intended. It was intended to continue the rule under Section 98, subdivision 5 # * * It was not intended, where all the brothers and sisters were dead, leaving descendants, to change the previous rule of law by limiting the class of those who would take to nephews or nieces only and to exclude participation by the children of deceased nephews and nieces (grand-nephews and grand-nieces of the decedent).”
There are two views of the expression “ per stirpes ” where nieces, nephews and issue of predeceased nephews and nieces are involved. One, the root or stock is taken to be that of the brothers and sisters, even though all of them predeceased the testator, or, the other view, the stirpes or stocks may be thought of as determined by the living nearest of kin to the intestate and those of the same relationship who have deceased (19 A. L. R. 2d 191, 192). The latter viewpoint was vigorously reaffirmed in Matter of Samson (257 N. Y. 358). Testator, in that case, died in 1929, and directed intestate distribution of his residuary estate. His next of kin were two nieces, children of a deceased sister, and eight grandnephews and grandnieces, children of three predeceased nieces, children of his predeceased brother. The court said (p. 361): “ The two surviving nieces take in their own right. They do not represent any one but take directly as members of the nearest class of relationship to the *853 intestate. The ‘ respective stocks ’ (Subd. 11) are determined by the nearest surviving blood relatives * * * Here, no brother or sister survived and the ‘ stock ’ consisted of the class to which the living nieces belonged rather than the class of brothers and sisters all the members of which were dead. The clause in subdivision 5 which reads ‘ and the same rule shall prevail as to all direct lineal descendants of every brother and sister of the intestate whenever such descendants are of unequal degree ’, cannot mean, when nieces survive and all brothers and sisters have predeceased the intestate that the brothers and sisters constitute the 1 stock ’.” Distribution as directed by the Appellate Division (233 App. Div. 173) in five primary shares, a share to each of the living nieces, and three shares per stirpes to the grandnephews and grandnieces, was affirmed.
The commission’s observation that no change was intended to the previous rule of law, where nephews and nieces were the nearest in degree of relationship to the intestate, by limiting the class of those who would take to nephews and nieces only, and to exclude participation by the children of deceased nephews and nieces, undoubtedly had reference to the law as it existed prior to September 1, 1898 (Matter of Hadley, 43 Misc. 579; Matter of Ebbets, 43 Misc. 575, affd. sub nom. Matter of De Voe, 107 App. Div. 245, affd. 185 N. Y. 536; Matter of Butterfield, 211 N. Y. 395, 399; Matter of Suckley, 11 Hun 344; Adee v. Campbell, 14 Hun 551, affd. 79 N. Y. 52). Code of Civil Procedure (§ 2732, subd. 12) then read: “Ño representation shall be admitted among collaterals after brothers’ and sisters’ children,” a rule which was always known as the Justinian rule (Matter of Ebbets, 43 Misc. 575, 576). That rule as well as other Novellae of Justinian and the English Statute of Distributions, from which our laws of distribution have been in some measure based, are traced and commented upon in Matter of Youngs (73 Misc. 335); Hurtin v. Proal (3 Bradf. 414); Matter of Suckley (supra); Adee v. Campbell (supra).
The commission summarized their intentions in the concluding paragraph (p. 304): “ The Commission therefore intends to continue, what they regard, has been the existing rule that where a decedent leaves no surviving brothers or sisters, but children of deceased brothers or sisters and grandchildren or other descendants of deceased brothers or sisters, that descent and distribution shall be per stirpes according to the root or stock of the deceased brother or sister.” That statement was a non sequitur insofar as it included the phrase 1 ‘ according to the root or stock of the brother or sister,” as it was neither consonant with the totality of their preceding statements of *854 objectives of no changes nor declarative of the law in effect in 1929 as expounded and vigorously restated in Matter of Samson (257 N. Y. 358, supra). The said phrase inaccurately defined the stirpes in the light of the commission’s statement in the second paragraph of its comments respecting the amendments to subdivision 6 by chapter 599 of the Laws of 1930, that it intended no change in the law as it existed in 1929, where all of the brothers and sisters were dead, but descendants of deceased brothers and sisters survived. Matter of Samson definitely held that in 1929 stirpital distribution in such a situation arose upon the stock of the deceased nephews and nieces, and not their parents who were brothers and sisters of the deceased.
The commission’s aforesaid statement defining the words ‘ ‘ per stripes ’ ’ was cited by the learned Surrogate in Matter of Samson (139 Misc. 490, 493-494) in his finding that distribution to the nieces, nephews, grandnephews and grandnieces should be made upon the root or stock of the brother and sister, a determination disapproved by the Appellate Division (233 App. Div. 173) and by the Court of Appeals. The inclusion of the words “ per stirpes ” in the present statute was unaccompanied by any statement as to its reason. The comments of the commission with respect to subdivision 6 were to the effect that no changes were made or intended to any provisions, nor to the method of distribution. They made no affirmative statement that any changes in the method of distribution were intended or made. Where changes were made or intended in other subdivisions of the same section however the commission called attention to them in plain language, and in many instances cited the laws of other States respecting the sources of such changes, the evils to be corrected and the beneficial results sought to be attained.
The applicability and controlling effect of Matter of Samson (supra) is denied by the accountant, as it was predicated upon the law in effect in 1929, which did not have in the then existing statutory provisions a requirement for “ per stirpes ” distribution. The words “ per stirpes,” as stated above, were included in the sixth line of subdivision 6,-effective September 1, 1930. The entire subdivision has since remained unchanged. It is contended that what the Legislature has effected is a restoration of the law as it existed originally in the Laws of 1786, and as construed in Jackson v. Thurman (6 Johns. Rep. 321) decided in 1810, when James Kent, was Chief Justice. The Per Curiam report was as follows: 1 ‘ Per Curiam. The fifth rule, or canon of descent, in our statute, regulating descents, (Laws, vol. 1, p. 46, sess. 9. c.12.) (a) has departed a little from the principle *855 adhered to, in the order of lineal descent, and has carried, to an unusual length, the doctrine of inheritance, per stirpes, or by representation. Thus if A dies seized of land, and his nearest heirs are a brother and two nephews, by a deceased brother, the two nephews must claim by representation, to entitle themselves to a share of the estate with their uncle. But, if A dies seized of land, and his nearest heirs are a nephew, by a brother deceased, and two nephews by another brother deceased, in this case, the claimants all stand in equal degree of consanguinity, being all nephews to the common ancestor, and might all well inherit equally, or per capita; yet the statute makes them inherit per stirpes, or such share as their parents respectively would have inherited, if living; and, of course, one nephew would take one half of the estate, and the other two nephews the other half. The present is such a case; and it is carrying the doctrine of inheritance, per stirpes, further than it is carried in the case of lineal descent; and further than it was carried in the celebrated novel of Justinian, (118.) from which the statute of distributions was copied; but it is clearly the language and meaning of the statute.”
The Revised Statutes of 1830 (1 Rev. Stat., ch. 752, §§ 8, 9) altered the rule. In the words of the revisers (Fowler, Decedent Estate Law [1911], p. 554): “It has been decided by the supreme court (6 Johns. Rep. 322) and the words of the statutes seem plainly to demand that construction, that nephews or nieces, where there are no brothers or sisters, do not take equally, but only the shares of their respective parents, thus changing the rule that obtains as to lineal descendants, who, when of the same degree of consanguinity, always take in their own right in equal portions, and not by representation. It seems desirable that the statute should be rendered uniform in its provisions, and no reason is perceived why the rule applicable to lineal descendants, should not be extended to collaterals. This is one of the alterations effected by the three last sections; another is, that they extend the right to take by descent, to the issue of nephews and nieces. As the law now is, a grand nephew could not take at all under the statute. ’ ’ The observation made by the revisers that, “ It seems desirable that the statute should be rendered uniform in its provisions, and no reason is perceived why the rule applicable to lineal descendants, should not be extended to collaterals ” is equally as pertinent today as it was then. The uniformity of descent of real property to lineals and collaterals was unchanged for the next 100 years. In 1930, the laws covering the descent of realty and the distribution of inte *856 state personalty were combined into the present section 83 of the Decedent Estate Law. The commission responsible for that legislation considered the changing economic conditions and the changing legal concepts of the rights of inheritance, and made some changes, giving the reasons therefor. The commission did not, however, in anywise refer to any outmoded method of distribution, or to indicate that it intended a restoration of the law as it existed prior to 1830.
Surrogate Wingate was a member of the aforesaid commission. He decided Matter of Loglier (159 Misc. 194) which involved a decedent who died in 1933, and held that each living nephew and niece was entitled to one share of the distributable estate, and that the descendants of a deceased niece were entitled collectively to the share which the said niece would have been entitled to had- she lived.
Matter of Strohmer (149 Misc. 219) involved the estate of an intestate who died in 1932, and a fact situation similar to that here. At page 221, Surrogate Delehanty observed that the objecting nephew emphasized the final paragraph of the commission’s note to subdivision 6. He pointed out that “ The entire note of the Commission makes it plain that no change in the law of distribution was intended. The note says this in so many words. If inadvertently the note contains language which might bear a different interpretation it nevertheless remains the fact that the language actually reinserted in the law by the Legislature was the precise language (except for the change necessary to include reference to descent) which had been in the statute and had been construed over decades.” Surrogate Foley was the chairman of the said commission. Matter of Landis (N. Y. L. J., March 9, 1939, p. 1095, col. 3F) was decided by him. That involved a decedent who died in 1935, survived by eight nephews and nieces as his nearest relatives. One of the nieces, the only child of a predeceased sister, claimed a one-quarter share, and the other nieces and nephews were children of two other predeceased sisters and a brother. Surrogate Foley said the claim was based upon ‘‘ an erroneous theory as to the distribution of intestate property and as to what constitutes stirpital distribution. Where the relatives of a decedent are of equal degree of kindred all share equally. In a stirpital distribution the number of stocks to be distributed is determined by the number of the nearest class of blood relatives who survive the decedent and the number of such class who have died leaving issue surviving the decedent.” He rejected the claim and directed equal distribution to all of the nieces and nephews. While the eminent Surrogate’s definition of stirpital distribution *857 may be considered obiter dictum, nevertheless it presents his viewpoints and is entitled to merited consideration.
In the fact situation present here the court determines that distribution shall be made in seven equal shares, one share each to the living nieces and nephews, and one share collectively to the issue of the predeceased niece. (Matter of Samson, 257 N. Y. 358, supra.) Settle decree on notice.