Maximilian Moss, S.
This proceeding seeks the judicial settlement of the account of petitioner as substituted trustee of the secondary trust for testator’s grandson, Robert De Bevoise Powers, which terminated by his death on July 21, 1958, without issue. Petitioner further presents a question of construction to determine the persons entitled to receive the remainder of the trust estate and in what proportions under the trust provisions contained in paragraph Twelfth of testator’s will as modified by paragraph First of the codicil.
Testator died on December 27, 1899, leaving a will dated May 13, 1893 and a codicil dated May 15, 1895 which were duly admitted to probate on May 15, 1900. He was survived by five children as sole distributees, all of whom predeceased the termination of the trust involved herein, two leaving no issue. Paragraph Twelfth of the will established a primary trust of certain real property with directions to pay the net income to his son, William Powers, during his life. The disposition of the remainder upon William’s death was altered by paragraph First of the codicil which reads as follows: “ First: I hereby alter the trust provisions contained in the 12th subdivision of my Will in favor of my son, William and his descendants as follows, that is to say: at the death of my said son William, or, in case I survive him, then upon my death, I direct that the lands and real estate devised in said 12th subdivision of my Will to my son george powers in trust, be divided by said trustee or his successor or successors, into as many equal parts as shall equal the number of children of my said son William then living and who shall be living at the time of my death; and I direct that one of the said parts shall be held by said trustee, his successor or successors, as trustees under said 12th subdivision of my Will during the life of each of my said grandchildren, and the net income be paid to said grandchild during his or her life, that is to say, one share as a separate trust for each grandchild; and upon the death of each grandchild the property so held in trust *181 for him. or her shall become the property of his or her surviving descendants, if any, to whom I give and devise the same; or, if there be no such descendants, then the same shall become the property of my heirs at law according to the present laws of the State of New York.’7
The italicized subjunctive clause in the foregoing paragraph of the codicil is the portion to be construed. William Powers, the primary life beneficiary, died on November 6, 1921, leaving him surviving two sons, William Harold Powers and Robert De Bevoise Powers, and no other descendants. In consequence, the trust estate became divisible and was set up as separate trusts for the benefit of said two sons during their respective lives pursuant to accounting decree dated May 1, 1923. The trust for William Harold Powers was judicially settled by final decree dated June 20,1946, pursuant to which the personal property of said trust was distributed to his daughter, Georgianna Powers Goerke.
As to the trust accounted, for herein, since the second life beneficiary, Robert De Bevoise Powers, died and left no descendants to take the remainder, the question for determination is: Did testator intend that the trust property should pass to his heirs as of the time of his own death or as of the time of death of said life beneficiary, i.e., the class of persons who would constitute his heirs if he were deemed to die, possessed of such property, immediately after the death of said life beneficiary? In either case membership in the class of heirs is to be determined and distribution made “ according to the present laws of the State of New York.”
The general rule of testamentary construction is that the class described by a testator as his heirs at law to whom a remainder interest is given by will, is to be ascertained as of the date of death of the testator in the absence of an expressed or implied intention to the contrary (Matter of Bump, 234 N. Y. 60; Matter of White, 213 App. Div. 82). Such an intention to the contrary may be derived from the language of the will or from the general testamentary scheme or surrounding circumstances (Matter of Fabbri, 2 N Y 2d 236; Matter of Cutter, 5 Misc 2d 737, affd. 4 A D 2d 966, affd. 5 N Y 2d 1018) in any of which events the class will be determined as of the date of death of the life beneficiary when the trust would terminate and the remainder be distributed.
Intention is the controlling although often elusive factor in solving any problem of construction. There is no formula or set pattern which can be relied upon, more often it is a case of balancing probabilities. Each case must depend upon its own *182 peculiar facts and circumstances which seldom are the same in any two cases.
Precedents are, however, helpful as examples of the application by the courts of the established indicia of intent. There is a line of eases which establishes the rule of construction that where there is a primary gift of a remainder to a class the members of which are to be determined at the termination of the trust and a substitutional or secondary gift to heirs in the event that none of the primary beneficiaries are living at the termination of the trust, the primary gift to the class being contingent, the secondary or substitutional gift to heirs is also contingent and the class of heirs entitled to take should be determined at the death of the life tenant. (Salter v. Browne, 205 N. Y. 204; Matter of Fishel, 167 Misc. 145, affd. 256 App. Div. 915, motion for leave to appeal denied 280 N. Y. 851; Matter of Sayre, 1 A D 2d 475, affd. 2 N Y 2d 929; Matter of Thibaut, 6 Misc 2d 376.)
In Matter of Sayre (supra) both the reasoning and application are appropriate to the instant matter. There testator gave all his property in trust with income to his wife for life, and at her death remainder to his children then living in equal shares, the children of any predeceased child to take their parent’s share, and if there be no child or descendant living at the time of the wife’s death to his sister if then living, and if she be then deceased 1 ‘ unto my heirs at law and next of kin, according to. the provisions of the Statutes of the State of New York relating thereto.” (Italics supplied.) Testator died in 1919 without issue. His heirs then were four sisters, one brother, and a nephew of a predeceased brother. When the widow died in 1954 his heirs determined as of that time were a nephew and a niece. The Appellate Division held that the heirs of testator must be determined as of the date of death of the life tenant, and that the ultimate remainder would be shared between the nephew and niece. The ultimate remainder was itself contingent and substitutional. This indicated an intention to postpone vesting until termination of the trust and that the class to share in the distribution of the principal were the heirs at the death of the life tenant. It was unlikely, the court said, that after requiring survivorship as a condition of the prior remainders testator would intend his heirs to be determined without regard to survivorship, so that persons who predeceased the life tenant might nevertheless qualify as heirs. If that were done, the remainder would not vest in testator’s heirs but in their heirs or legatees who need not be heirs or relatives of testator at all. The court believes that the general testamentary scheme of testator, particularly the requirement of survivorship, showed that testator *183 intended to benefit his own heirs rather than their residuary legatees (see Matter of Battell, 286 N. Y. 97, motion for reargument denied 286 N. Y. 722; Matter of Wilson, 11 Misc 2d 579, mod. 269 App. Div. 665, affd. 294 N. Y. 903). The language of the will supports this construction. After several specific bequests testator in paragraph “Tenth” gave $500 to each of three named grandchildren “ as shall be living at the time of my death.5 ’ If testator intended in the codicil to have his heirs determined as those living at the time of his death he could have used the same quoted phrase in this connection as he did in the case of his son William predeceasing him, when he directed that secondary and separate trusts be set up equal to the number of William’s children “living at the time of my death.”
Throughout his will testator showed a concern for his wife and lineal descendants almost exclusively, especially his son, George Powers, whom he named executor and trustee and to whom he gave a greater share of personal property and several parcels of real estate outright. If the codicil were interpreted as including testator’s heirs at law determined as of the date of testator’s death some of the successor beneficiaries would be nonblood relatives and strangers, contrary to the testamentary scheme, for testator died in 1899 while Robert De Bevoise Powers died in 1958. Did testator intend that the class of heirs be determined as of a time 59 years before the death of the life beneficiary? The court does not think so.
In the various trusts for the life benefit of his four other living children the substitutional gift of the remainder, where a child would die leaving no descendants him or her surviving, was variously to George Powers or to his descendants, or to the descendants of the other children, or to the respective lawful heirs of testator’s children. In paragraph “ Second ”, dealing with the purchase of a burial plot, testator provided that if he did not purchase a burial plot the executor should purchase one in Greenwood Cemetery and have the deed made to “ such persons as shall at the time of such purchase be my heirs at law.” Viewing the will alone, testator shows no intent to have his heirs as of the date of his death, or their successors in interest many years later, benefit from the trust remainders. The testamentary scheme clearly shows an intent to have his lineal descendants as the remaindermen whenever possible. Had he intended to fix the time of determination of the class of heirs as of the date of his own death, he could easily have done so explicitly or by the phrase “ me surviving ” or similar qualification. But that could and in fact would bring in strangers as *184 remaindermen who are successors in interest to his heirs as of the date of his death. On the other hand his heirs as of date of death of the life beneficiary are his own descendants, in line with the presumption and testamentary scheme favoring blood relatives as the beneficiaries.
Another factor to be considered is the element of incongruity which would result if testator’s heirs be determined as of the date of his death. Such heirs would be his five surviving children, including William, the first life beneficiary and father of Robert De Bevoise Powers, the second life beneficiary, whose death without issue precipitated the question of construction. The estates of the two life beneficiaries would then share in the remainder when it is clear that testator intended to exclude all but their descendants from that benefit. Absent their descendants it is more in line with the testamentary scheme that testator’s other descendants living at the termination of the trust rather than the estates or successors in interest of his children surviving him years before become entitled to the ultimate remainder. Any other result would be incongruous. Although such incongruity by itself would be insufficient to overcome the general rule that a testator’s heirs or distributees are ordinarily to be determined as of the time of his death, that element together with other testamentary language and circumstances here present tending to show a contrary intent, should render the general rule inapplicable. The subject of incongruity is considered at length in Matter of Carlin (6 A D 2d 281, affd. 6 N Y 2d 914). Under the circumstances there a divided court held the element of incongruity to be an even more determining factor than in Matter of Sayre (supra). (Cf. Matter of Roth, 234 App. Div. 474; Matter of Creveling, 7 A D 2d 150.)
Still another indicia of intent is that the language in the codicil looks to the future. There are no words of present gift to testator’s heirs and no named persons but to a class. It is provided that the trust estate “ shall become the property of my heirs at law ”. And although in the prior provision relating to the descendants of the grandchild the quoted phrase is followed by words of present gift, the contingency of the gift nevertheless is not weakened thereby. The distribution in both cases is to a class and must be confined to those who come within the. class at time of distribution. The remainders are substitutional and indicate that survivorship to the date of distribution was intended (Matter of Thibaut, 6 Misc 2d 376, supra, and cases cited; Matter of Butts, 4 Misc 2d 430; cf. Matter of Squires, 102 N. Y. S. 2d 735).
*185 Finally, if testator intended the remainder to go to his heirs at the time of his death, the words “ according to the present laws of the State of New York ” appear to be superfluous (see Matter of Thibaut, supra). There must have been a thought in the mind of the testator when he included the quoted provision evinced by his use of the word “ present ”. This does not indicate, as argued by counsel, that he intended his heirs to be determined as of the date of his death. “ To the extent that questions respecting the testator’s disposition of his property are dependent on the construction to be placed on the phraseology of the will, the point of time will be, not the death of the testator, but the date when the will was executed” (Davids, New York Law of Wills, §§ 7, 456). “ Present ” refers to date of the codicil, and by the quoted phrase and the word “ present ” testator intended to have the ultimate remainder go to heirs as defined by the law as of date of codicil but distribution to be made to those members of the class living at time of distribution in accordance with the shares to which they would be entitled under the “ present ” laws of intestacy, i.e., as of the date of the codicil and not as they might be under the law in effect at time of distribution. The only relevant difference between “ heirs ” as of the dates of the codicil and testator’s death and as of the time of distribution herein is that spouse is now included as an “heir” (Decedent Estate Law, § 47-c; Matter of Waring, 275 N. Y. 6; Matter of Bartell, 286 N. Y. 97, supra; Matter of Lake, 170 Misc. 840; Matter of Hyde, 122 N. Y. S. 2d 304, affd. 282 App. Div. 1100). If testator intended vesting of the remainder as of date of his death he needed only to say that the trust fund 1 ‘ shall become the property of my heirs at law. ’ ’ He could even have added “ according to the laws in force in the State of New York.” If true emphasis is to be given to the word 61 present ’ ’ it must lead to the conclusion that it implied a subsequent vesting in favor of a class to be determined as of the later date but in accordance with the prior law (see Matter of Herrick, 10 Misc 2d 213).
The conclusion, therefore, seems to be justified that testator intended that the remainder become the property of the members of the class of his heirs, as defined by the law at time of the codicil, living at death of the life beneficiary, as if testator had survived until then and died a moment after the life beneficiary. The will is construed accordingly.
The parties disagree as to the respective shares of testator’s heirs based upon stock. Some contend that the number of stock as basis for distribution is three, corresponding to testator’s three sons who died leaving issue. The other parties contend *186 that the number of stock is four, corresponding to the number of living grandchildren (1) plus the number of deceased grandchildren (3) leaving issue (Matter of Samson, 257 N. Y. 358; Dwight v. Gibb, 208 N. Y. 153; Matter of Welsh, 5 Misc 2d 378; Matter of Butts, 4 Misc 2d 430, supra; Matter of Benedict, 103 N. Y. S. 2d 722). The applicable law and the leading case of Matter of Samson (supra) are analyzed and applied by this court in Matter of McKeon (25 Misc 2d 850). Although the last case dealt with nieces and nephews the discussion clarifies the rule of distribution among lineal descendants as to which there has been no substantial change in the law. The rule is that the number of stock is determined by the number of living nearest hin to the decedent and of those in the same class who died leaving issue surviving decedent. Here there are one living nearest kin, a granddaughter, Florence E. Woodward, and three grandchildren who died leaving issue surviving. Therefore the stock is divisible into four parts and distribution made per stirpes accordingly.
Distribution of the trust remainder herein shall, therefore, be made as follows: one fourth to the only living grandchild, Florence E. Woodward; one fourth to Georgianna Powers Goerke, the only child of one predeceased grandchild; one fourth to Edward Monroe O’Flyn, the only child of the second predeceased grandchild; and one eighth each to Thomas E. Powers and George A. Powers, Jr., the children of the third predeceased grandchild.