OPINION OF THE COURT
Gerald Saperstein, J.
Robert C. Pace died a resident of the County of Cayuga on July 9, 1977 at Auburn, New' York. He left a last will and testament dated June 6, 1974, which was duly admitted to probate in the Cayuga County Surrogate’s Court on July 16, 1977. On said date, letters testamentary and letters of trusteeship were granted to the Marine Midland Bank. In the petition for probate, the value of the estate was alleged to be $235,000.
*971 The Marine Midland Bank as executor and trustee, has petitioned this court for a construction of article "fifth” and "sixth” of the last will and testament, which read as follows:
"fifth. I give, devise and bequeath the sum of $50,000 and premises now known as 154 Owasco Street and 156 Owasco Street in the Town of Owasco, Cayuga County, New York, unto Marine Midland Bank-Central, In Trust, Nevertheless, for the following uses and purposes, namely:
"A. I direct said trustee to invest the cash portion of the trust in 'day of deposit to day of withdrawal’ interest paying savings accounts, preferably in local banks, paying highest rates of interest available from time to time. I also give said trustee power to sell real estate upon the termination of this trust.
"B. I direct said trustee to cause all buildings on said 154 Owasco Street and 156 Owasco Street, other than the existing garage and tool shed, to be razed to the ground, the land graded, filled, and seeded and the premises maintained in a neat and attractive condition. The trustee shall use as much of the income from the savings account as necessary, and principal if and when income is insufficient to the payment of taxes and, if economically feasible, public liability insurance covering the premises, to the razing of the buildings and for the subsequent grading, filling, seedings and maintainance as aforesaid.
"C. So much of the income of this trust as is not needed for the purposes set forth in sub-paragraph B, above, shall be paid over in the month of January in each year to my nephew John D. Underhill and his wife Gretchen Underhill, or the survivor of them and when both are dead, share and share alike each January unto those of their children who were living at the time of my death and are living on January first of the year next following the time that both of their parents have died. Thereafter, as each of the children of John D. Underhill and Gretchen Underhill die, the income shall be paid during the month of January each year share and share alike unto those of them still living on the first day of January next following each such death. When all of such children of John D. Underhill and Gretchen Underhill are dead, the trust shall terminate, the real estate shall be sold and the balance remaining shall be distributed share and share alike unto the legal representatives of each of the children of John D. Underhill and Gretchen Underhill who *972 were living at the time of my death to be distributed as assets to their estates. At the time of the conveyance of No. 156 Owasco Street, the deed shall contain a covenant running with the land permanently forbidding the construction of any garage on No. 156 Owasco Street other than the one in line with and no further west than the west line of the garage or garage foundation now standing on No. 154 Owasco Street.
"sixth. I give, devise and bequeath all the rest, residue and remainder of my estate, after payment of the items mentioned in paragraph 'FIRST’ hereinabove, unto Marine Midland Bank-Central, In Trust, nevertheless, for the following uses and purposes, namely:
"A. I direct that the assets of said trust shall be invested in United States Government Securities and in day of deposit to day of withdrawal type interest accounts, preferably in local banks, and paying the highest rates of interest available from time to time.
"B. The income of such trust shall be paid out during the month of January of each year following my death unto John D. Underhill and his wife Gretchen Underhill or the survivor of them. When both of them are dead it shall be paid over share and share alike each January unto those of such children of John D. Underhill and Gretchen Underhill who were living at the time of my death and are living on January first of the year next following the time that both of their parents have died. Thereafter, as each of such children of John D. Underhill and Gretchen Underhill dies, the income shall be paid during the month of January of each year share and share alike unto those of them still living on the first day of January next following each such death. When all of such children of John D. Underhill and Gretchen Underhill are dead, the trust shall terminate, the trustee shall liquidate the estate and the balance remaining shall be distributed share and share alike unto the legal representatives of each of the children of John D. Underhill and Gretchen Underhill who were living at the time of my death to be distributed as assets of their estate.”
Specifically, the fiduciary is asking the court for permission to enter an order authorizing the Marine Midland Bank to take the following courses of action: (1) To disregard the provision in article fifth relating to the razing of the buildings and improvements located at 154 and 156 Owasco Street, (2) to disregard that provision and instruction in article fifth *973 as to the continuing covenant in any deed of 154 and 156 Owasco Street, which covenant runs with the land and forbids the construction of any garage other than the one in line with and no further west than the garage now on 154 Owasco Street, (3) to determine that the trust funds established under article fifth and article sixth shall be divided into five respective trusts, one for each child of John D. Underhill and Gretchen Underhill, and that said trusts shall terminate upon the death of each respective child, the principal to be paid to the estate of each child at the time of his death, and (4) that the trust be authorized to invest in any United States Government security or any local bank account bearing an interest rate equal to or in excess of that paid by the day of deposit to day of withdrawal type of account, and (5) for such other and further relief as to this court may deem just and proper.
John D. Underhill and Gretchen Underhill have five children residing with them at 673 Morris Avenue, Springfield, New Jersey, namely:
David L. Underhill born October 23, 1960 age 16
Susan E. Underhill born October 19, 1962 age 14
Thomas D. Underhill born March 23, 1965 age 12
Catherine A. Underhill born July 18, 1966 age 10
John C. Underhill born March 18, 1969 age 8
The court appointed Attorney John P. McLane of Auburn, New York, as guardian ad litem for the aforesaid minor children of John and Gretchen Underhill.
No factual evidence was presented by the attorneys for the petitioner, or by the guardian ad litem, they advising the court that questions of law only were being presented for construction.
According to the petition, the properties at 154-156 Owasco Street, in the Town of Owasco, County of Cayuga, State of *974 New York are located in a mixed residential area. The structures on said properties are in good physical condition and valued at approximately $50,000.
The age old rule of law in New York State is that the intention of the testator should be followed except where it is in violation of public policy. (Matter of Larkin, 9 NY2d 88.) Also in the opinion of this court, the intention of the maker of a will should not be carried out when the results would be absurd, abhorrent or a waste of the assets of an estate. Sometimes it is necessary to look to sister States for guidance. When the purpose of the testator is merely capricious and will benefit no one by its performance, the courts will not compel its execution. (Eyerman v Mercantile Trust Co., 524 SW2d 210 [Mo]; Brown v Burdett, 21 Chan Div 667 [Eng 1882]; Colonial Trust Co. v Brown, 105 Conn 261; Board of Comrs. v Scott, 88 Minn 386; Scott, Trusts [2d ed], §§ 62.14, 124.7.) Public policy is to be found in the Constitution, statutes, and judicial decisions of the State and Nation. (Hollis v Drew Theol. Seminary, 95 NY 166, 171-172; Matter of Rahn, 316 Mo 492; Martin v Ahrens, 274 US 745.)
In a case much like the present one, the testatrix directed her executor "to cause our home * * * to be razed and to sell the land”. The court refused to allow the demolition on the grounds that the testatrix’s purpose was merely capricious and violative of public policy in that it was detrimental to the decedent’s estate, neighboring lands and the community as a whole. (Eyerman v Mercantile Trust Co., supra.) The court noted that (p 217) "[although public policy may evade precise, objective definition, it is evident * * * that this senseless destruction serving no apparent good purpose is to be held in disfavor. A well-ordered society cannot tolerate the waste and destruction of resources”.
To violate public policy the act in question need not be something which the testator could not have done with his own land while he was alive. There is a greater need for the protection of the community interests after the death of the testator. Although a person may wish to deal capriciously with his property, while he is alive, his self-interest will usually prevent him from doing so. After his death there is no such restraint and it is against public policy to permit the decedent to confer this power upon someone else where his purpose is merely capricious. "Such considerations however have not tempered the extravagence or eccentricity of the *975 testamentary disposition here on which there is no check except the courts.” (Eyerman v Mercantile Trust Co., supra, p 215.)
In the early English case of Brown v Burdett (21 Chan Div 667, supra) the testatrix devised her house in trust with directions that the doors and windows be boarded, shuttered, bricked and sealed for 20 years and thereafter pass to the named beneficiaries as tenents in common. The provision of the will was found void.
In Colonial Trust v Brown (105 Conn 261, supra) the court invalidated the provisions of a will restricting construction of a building more than three stories in height arid forbidding leases for more than one year. The land was in the central business district and a prime area for an office building or store. Harm to the public was found, in that it would tend to inhibit the natural growth of the community. The court stated (p 286): "The restrictions militate too strongly against the interests of the beneficiaries and the public welfare to be sustained, particularly when it is to be remembered that they are designed to benefit no one, and harmful to all persons interested, and we hold them invalid as against public policy.”
In the present case, there can be no question that the testator’s direction is designed to benefit no one and actually does harm to the estate and beneficiaries by asking them to pay an inheritance tax on property worth approximately $50,000 then directing the fiduciary to raze said property. In addition, the trust fund will be depleted by the cost of the demolition, the annual real property taxes, and maintenance costs for the premises. No rents will be derived, since the land is to be left vacant for the full term of the trust, which could be 60, 70, or even 80 years.
Demolition of the two houses is violative of public policy. Destruction of two houses which are typical of the character of the neighborhood cannot but affect disadvantageously the adjoining properties by leaving an unnatural gap in the pattern of residential development. (Eyerman v Mercantile Trust Co., 524 SW2d 210 [Mo], supra.) This is especially true in the present case where a tool shed and a garage are to be left standing on an otherewise vacant lot.
New York statutory law demonstrates a long-standing public policy against waste. Article 8 of the New York Real Property Actions and Proceedings Law prohibits one in lawful possession of real property from doing lasting damage to the *976 freehold or inheritance by doing that which tends to lessen or destroy the value of the inheritance. A fiduciary may be liable for damage and subject to removal for committing waste. (Real Property Actions and Proceedings Law, § 812; SCPA 711.)
The unnecessary demolition proposed in this case is clearly in violation of the public policy against waste represented by the statutory provisions cited. The court is of the opinion that the policy behind this statutory directive should be reasserted and strengthened by this court.
In the present case the testator’s wishes are capricious in that they are not something which the testator would have done while alive. It is also against policy in that they would cause harm to the community in the loss of real property tax revenues over the years, harm to the neighborhood and harm to the individual beneficiaries. There would be no benefit to offset these losses.
To analogize: if the testator had directed the fiduciary to destroy $50,000 in negotiable instruments, this direction would clearly be construed a waste and of no benefit to anyone. Such a provision would be as meaningless, repugnant, invalid and against public policy, as the instant provision.
Trusts are to be established for charitable or beneficial purposes. This trust is clearly destructive and if allowed to stand would deprive the beneficiaries of substantial assets in the estate.
The testator’s second directive in regard to the premises known as 156 Owasco Street was that there be a restrictive covenant placed in any future deed limiting the construction of a garage on the premises. Restrictions of this kind are not uncommon and standing alone, this provision cannot be said to violate public policy or statutory law. (Trustees of Columbia Coll. v Lynch, 70 NY 440.) However, such restrictions are not favored by the courts and where two constructions are possible the court should adopt the one granting clear and unobstructed title to the land. (Blair v La Due, 14 AD2d 373.)
Where a portion of a will is found invalid the courts do not reject the whole will, rather they seek to enforce the valid parts consistent with the testator’s intent. (Matter of Hitchcock, 222 NY 57, 73.) The court may add, excise, change or transpose language or provisions in order to effectuate testamentary intention. (Matter of D’Allesandro, 55 Misc 2d 909, 912.) In doing so the court is bound to look at the instrument *977 as a whole to determine the intent of a testator. (Matter of Fabbri, 2 NY2d 236.) Looking at the whole will, the restrictive covenant imposed by the testator is best viewed as an integral part of the testator’s plan in relation to the lots at 154 and 156 Owasco Street. Valid provisions of a will or trust will not be enforced where they are interdependent with invalid provisions. (Matter of De Witt, 113 App Div 790, affd 188 NY 567.)
The testator’s intent was apparently to memorialize the property by having it remain vacant for the term of the trust. The court being of the opinion that the demolition of the houses should be prohibited, the testator’s whole scheme in regard to the premises is defeated. The court having held that the trust is invalid as to the destruction of the houses, it follows that the essential purpose of the trust, which was to have the land vacant with the exception of the garage and tool shed has failed. The restrictive covenant no longer has meaning.
Therefore it is the considered opinion of this court that article fifth is immoral, a waste, against public policy and invalid, including the convenant running with the land permanently forbidding the construction of any garage at 156 Owasco Street other than one in line with and no further west than the west line of garage or garage foundation now standing on 154 Owasco Street. The fiduciary is directed to sell the property located at 154-156 Owasco Street, Town of Owasco, New York, without any of the restrictions or covenants set forth in article fifth. The rest of article fifth being so like article sixth, the fiduciary is directed to administer the net proceeds of said sale according to article sixth of said will, as hereafter construed.
After invalidating a provision of a will, the court must examine the entire will to determine what, if any, of the testator’s scheme can still be enforced by the court. (Matter of Hitchcock, 222 NY 57, 73, supra.) In doing so, the court must look to the intent of the testator as expressed in the will. (Matter of Fabbri, 2 NY2d 236, supra.) It is not strictly a matter of law whether the excision of the invalid portions of a will leave intact the scheme of the testator, but also a matter of good judgment which must be left to the court in the last analysis. (Matter of Holmes, 26 AD2d 151, 154.)
The testator intended that the Owasco Street premises should remain in a vacant state for as long as practicable. To this end the decedent based the term of the trust on the lives *978 of seven persons, including five minors ranging in age from 8 to 16 years. This plan would require the estates of the first four children to die to remain open for what could be many years until the last of the five died. The court having directed the sale of the premises, the purpose of the testator in desiring a long trust life is no longer meaningful. The sole intent of the testator in establishing the estate trusts, which is not frustrated by directing that the aforesaid Owasco Street property be sold, was the desire to benefit the Underhill family. This purpose can best be accomplished by first placing all the net assets of the estate in one trust and distributing that income to John D. Underhill and Gretchen Underhill or to the survivor as set forth in article sixth.
The fiduciary is directed to pay the debts, funeral, administrative expenses, taxes and legacies in article first through fourth. (The directive in article sixth to pay items mentioned in paragraph first is an obvious mistake in drafting.) A single trust of all the rest residue and remainder of the estate shall be established by the fiduciary and the income distributed to John D. Underhill and Gretchen Underhill or the survivor as set forth in article sixth.
Upon the death of John D. Underhill and Gretchen Under-hill, the fiduciary is directed to establish five separate equal trusts for each of the five Underhill children for their individual lives, and to pay the income to each Underhill child in January as set forth in article sixth. Each trust is to terminate upon the death of the individual child and the principal therefrom to go to their legal representatives to be distributed according to article sixth. This trust arrangement most nearly accomplishes the testator’s scheme after removal of the invalid provision regarding the razing of the two dwellings, in that, it benefits John and Gretchen Underhill first during their lives and then each of their five children. At the same time, this scheme eliminates the problems inherent in establishing only one trust fund terminating upon the death of all seven persons.
In addition, the investment powers of the trustee should be expanded. The apparent purpose of limiting the real estate trust investments to day of deposit, day of withdrawal savings accounts was to assure ready availability for the cash payment of taxes, insurance and maintenance of the premises.
The court having ordered the real estate to be sold this limitation which is interdependent upon the iqvalid provision *979 to raze the two houses is no longer necessary. The investment authority of the fiduciary as set forth in article sixth, subdivision A of the will is expanded to include the statutory investment of the EPTL 11-2.2.