OPINION OF THE COURT
Simons, J.
Petitioners, Mary Ann Walker Narita and James J. Walker, II, are the adopted children of former Mayor James J. “Jimmy” Walker of New York City and beneficiaries of his estate. They instituted this will construction proceeding to obtain two adoption decrees in respondents’ possession which they claim were bequeathed to them by their father and which identify their natural mother or mothers.
The issue presented is whether the testator intended to bequeath the adoption decrees to petitioners by his will and, if he did, whether enforcement of such a bequest is consistent with the public policy of this State. The Surrogate denied the application and dismissed the petition. She held the decrees were not personalty transferrable by the will but that enforcement would be denied in any event because disclosure of their contents would violate the public policy of New York and Illinois (the State of the adoptions). The Appellate Division affirmed for the reasons stated by the Surrogate with one Justice dissenting (see, 99 AD2d 448). We now affirm.*
The testator, James J. Walker, and his wife, Violet Walker, adopted petitioner, Mary Ann Walker Narita, in Cook County, *357 Illinois, on or about March 28, 1936. In July of the following year, they adopted James J. Walker, II in the same jurisdiction. After the adoptions, Walker obtained copies of the decrees and, upon his return to New York, entrusted them to his lawyer, Sidney Harris. Walker died in New York City on November 18, 1946. He left a last will and testament dated October 8, 1945 which was admitted to probate in New York County on December 12, 1946. Walker’s will appointed Harris as executor of his estate and guardian of his children who were minors at the time of his death. Upon Harris’ death, Charles L. Sylvester, his partner, replaced him. Both Harris and Sylvester have since died and respondent law firm is the successor to the law firm of Sylvester and Harris. Respondent Richard H. Bernstein is its trusts and estates partner.
Petitioners contend that upon reaching their majority, they were entitled to possession of the adoption decrees. To support this contention, they rely on the following paragraphs of decedent’s will:
“third. I give, devise and bequeath to my beloved children, james j. walker and mary ann walker, any and all my personal property, including furnishings, articles of personal attire and memorabilia of every kind, nature and description.”
“sixth. All the rest, residue and remainder of my properties I hereby give, devise and bequeath to my children, james j. walker and mary ann walker, or the survivors of them, share and share alike.”
Respondents’ principal contention is that the testator did not bequeath the property to petitioners, and that even if he did the transfer with the resulting disclosure of the identity of petitioners’ natural mother or mothers would be contrary to public policy of New York as expressed in Domestic Relations Law §114.
Analysis starts with the general rule that the law permits a person possessing testamentary capacity to dispose of property to any person in any manner and for any object or purpose so long as such disposition is not illegal or against public policy (Matter of Watson, 262 NY 284, 299; Hollis v Drew Theol. Seminary, 95 NY 166, 172; Matter of Hughes, 225 App Div 29, 31, affd 251 NY 529; 94 CJS, Wills, § 93). The court’s job in overseeing the administration of a testator’s estate is to implement the testamentary plan the testator intended, determining intent from the words used in the will (Matter of Cord, 58 NY2d 539, 544; Matter of Jones, 38 NY2d 189,193; Matter of Buechner, *358 226 NY 440, 444) and construing them according to their everyday and ordinary meaning (Matter of Wilhelm, 60 AD2d 32, 36, affd 46 NY2d 947; Matter of Pelton, 190 Misc 624, 626). Once the testator’s intent is determined, it must control the disposition of the property unless it is contrary to some public policy or established law.
Construing testator’s will according to these rules, we determine that he intended to bequeath the adoption decrees to petitioners. Testator did not say so explicitly, but the gift is encompassed within two paragraphs of the will, paragraph third which bequeaths to petitioners “any and all my personal property” and paragraph sixth, the residuary clause which names petitioners as the sole objects of his bounty and conveys all the remainder of testator’s property to them. We construe the phrase “all my personal property” in the third paragraph broadly as indicative of an intent to dispose of all tangible personalty, known or unknown (see, Matter of Baker, 164 Misc 622, 624-625). That construction is consistent with EPTL 3-5.1 which defines personal property as any property other than reed property, including tangible and intangible things and would include documents such as adoption decrees (see also, 4 Page, Law of Wills § 33.24, p 334). This result is not altered by the attorney’s affidavit contained in the record in which he alleges that Walker entrusted the decrees to Harris during his lifetime, an act which he contends permits an inference that they were intended to be confidential. The will provisions are unambiguous and the affidavit is therefore inadmissible (see, Matter of Cord, 58 NY2d 539, 544, supra; Matter of Wells, 113 NY 396, 401). Equally unavailing is respondents’ contention that the doctrine of ejusdem generis should be applied to paragraph third to limit the general bequest of “all my personal property” to property similar in kind to the specifically enumerated items which follow — furnishings, personal attire and memorabilia. The words of a general bequest followed by enumerated articles are not limited to things similar to the specific items listed (see, Matter of Reynolds, 124 NY 388, 397). Though paragraph third is sufficient to sustain petitioners’ claims, we also construe the broad language of the residuary clause as bequeathing the decrees to them in keeping with the presumption that a testator intends to dispose of his entire estate by will (see, Matter of Jones, 38 NY2d 189, supra; Matter ofDammann, 12 NY2d 500).
Notwithstanding testator’s intent, the legacy may not be given effect because we conclude that to do so would be contrary *359 to the public policy of New York. We do not make that determination out of any personal sense of what is right for these litigants or of what satisfies the general public interest. The courts have no power to invalidate legacies or contracts because of their subjective view of what is sound policy or good policy. “[W]hen we speak of the public policy of the state, we mean the law of the state, whether found in the Constitution, the statutes or judicial records” (People v Hawkins, 157 NY 1, 12; see also, Glaser v Glaser, 276 NY 296, 302; Mertz v Mertz, 271 NY 466, 472; Straus & Co. v Canadian Pac. Ry. Co., 254 NY 407, 413; Hollis v Drew Theol. Seminary, 95 NY 166, supra). Those sources express the public will and give definition to the term (see, Muschany v United States, 324 US 49, 66; Vidal v Girard’s Executors, 2 How [43 US] 127). A legacy is contrary to public policy, not only if it directly violates a statutory prohibition, as the dissent suggests, but also if it is contrary to the social judgment on the subject implemented by the statute.
Illustratively, the courts will not enforce legacies and devises when enforcement would violate legal rules on the disposition of property such as the rale against perpetuities or the rules against creating an unlawful restraint on the power of alienation (see, e.g., Kalish v Kalish, 166 NY 368; Hacker v Hacker, 153 App Div 270), which attempt to bequeath the proceeds of a wrongful death action held for the exclusive benefit of the statutory distributees (EPTL 5-4.4; see, Matter of McHugh, 226 App Div 153), or which attempt to convey an interest in a joint tenancy (Levenson v Levenson, 229 App Div 402). Similarly, the courts will not enforce gifts conditioned on conduct which violates social policy, such as restricting a legatee’s right to marry (Matter of Liberman, 279 NY 458), or encouraging divorce or separation (Matter of Haight, 51 App Div 310; but cf. Matter of Hughes, 225 App Div 29, affd 251 NY 529, supra). And although a testator may legally dispose of certain property, statute or public policy may limit the manner in which he may dispose of it. Thus, a testator may dispose of his own body or direct the method or place of its burial, but he may not require that he be buried in an unauthorized place (see, Public Health Law § 4200 et seq.) and one court has held that although a testator has the power to devise real property, it would not enforce a direction that the trustee demolish the improvements and leave the land vacant for a number of years because to do so would violate the statutory policies against waste found in the Real Property Actions and Proceedings Law (see, Matter of Pace, 93 Misc 2d 969).
*360 The bequest of these decrees contravenes none of these policies: the gift of the decrees is absolute and their physical transfer does not violate any rule of property or tenure. This gift :.s contrary to public policy because consummation of the transfer is sought for the purpose of discovering information which it i s against the public policy of New York to disclose without good cause. That public policy is expressed in Domestic Relations Law § 114 (see also, Social Services Law § 372; Public Health Law § 4138-b).
Section 114 provides that all “papers” pertaining to an adoption shall be kept as a permanent “sealed” court record and ths.t no “person shall be allowed access to such sealed records * * * except upon an order * * * of the court in which the order [of adoption] was made”. The statute further provides that “[n]o order for disclosure or access and inspection shall be granted except on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct.” Section 114 does not apply to foreign adoption decrees and these were entered in Illinois before New York’s statute became effective in 1938. The policy underlying it is pertinent, however, because the statute existed at the time of the decedent’s death i:i 1946 and thus the policy it expresses applies to this construction proceeding (see, Matter of Samson, 233 App Div 173, affd 257 NY 358; see also, NY Jur 2d, Domestic Relations, § 5 [questions relating to adopted children are controlled by the law in effect at the decedent’s death]). Moreover, petitioners have called upon the New York courts to define the rights of parties to this proceeding and therefore we properly consider the social judgments embodied in our statutes.
Undoubtedly, section 114 expresses a public policy of this State which has evolved over the years. From 1873 until 1924 the Legislature permitted public access to adoption records (Alma Socy. v Mellon, 601 F2d 1225,1229, n 4,1235) but in 1924 the Legislature authorized the court, in its discretion, to order adoption records sealed (L 1924, ch 323, § 3 [Domestic Relations Law § 113]). Confidentiality became mandatory in 1938 (L 1938, ch 606, § 1 [Domestic Relations Law § 114]) and since then the Legislature on several occasions has adopted amendments to assure it (see, e.g., L1968, ch 320, § 3; L 1968, ch 365, § 1; L 1968, ch 1038, § 4). It recently addressed the subject in 1983 by adding Social Services Law § 373-a (L 1983, ch 326) and Public Health Law § 4138-b (L 1983, ch 898). In the former the Legislature provided that adoptive parents must be furnished a medical history of the natural parents, but only after identifying infor - mation had been removed from the records to preserve the *361 natural parents’ confidentiality. It also amended the Public Health Law that year by creating an adoption information registry, but contained in the statute were carefully constructed safeguards limiting the disclosure of identities. In Matter of Linda F. M. (52 NY2d 236, 239), we set forth the reasons for legislative concern: sealed records shield the adopted child from possibly disturbing facts concerning the child’s birth or parentage; sealing insures that the natural parents will not be able to locate the child and interfere with the relationship between the child and the adoptive parents; and, finally, sealing protects the identity and privacy of the natural parents. Relevant here is the last ground, the assurance acquired by the natural mother or mothers that their identity and privacy will not be disturbed. It is irrelevant that the information was available to petitioners at one time or that testator could have transferred the decrees to them during his lifetime because neither course was actually pursued. Petitioners seek the aid of the courts to obtain the decrees and discover their contents. Disclosure violates the existing public policy of New York, however, and the machinery of the courts is not available to them for that purpose (see, Matter of Johnson, 59 NY2d 461; Hollis v Drew Theol. Seminary, 95 NY 166, 172, supra; 94 CJS, Wills, § 93).
Accordingly, the order of the Appellate Division should be affirmed, with costs.

 Petitioners are at liberty to seek disclosure of the contents of the records in Illinois, of course.