OPINION OF THE COURT
 

 Simons, J.
 

 Petitioner York Winter is the grandnephew of Ilse Herz and a coexecutor and beneficiary of her will. At the time of the testatrix’s death, he was domiciled in the Federal Republic of Germany. The issue in this proceeding is whether the German
 
 Erbschaftsteuer,
 
 a tax imposed by the German government on his inheritance, should be paid by Winter or testatrix’s general estate to the ultimate detriment of the residual beneficiaries. We construe the will as evidencing testatrix’s intent to have the tax paid from the general estate as a cost of administration, and therefore reverse the order of the Appellate Division.
 

 Ilse Herz executed her last will and testament on November 20, 1988. By paragraph sixth, she devised all of her personal
 
 *718
 
 and household effects to petitioner, leaving to others whatever he did not want. Paragraph seventh provided that petitioner should determine where her personal effects should be delivered and directed that all shipping expenses were to be paid as a cost of the administration of her estate.
 

 In paragraph eleventh of the will, testatrix set forth the following bequest to petitioner:
 

 "I give and bequeath the sum of two hundred fifty thousand ($250,000.00) Dollars to my sister’s grandson, york winter, Brucker Weg 3, 8520 Erlangen, West-Germany, on the condition that he keeps these funds for himself and does not give them to his parents or sisters or brother and keeps them
 
 outside
 
 of Germany [emphasis in original].
 

 "It is my request that york winter take one hundred fifty thousand ($150,000.00) Dollars of the above mentioned bequest to him directly for his own personal use and fifty thousand ($50,000.00) Dollars should be used for storage of the furniture, for the cleaning and polishing of same, and the remaining fifty thousand ($50,000.00) Dollars should be used for the upkeep of the graves of my parents and sister, the arrangement of which york winter is familiar with. If there are any remaining funds from this bequest, then they are to go directly to york winter.”
 

 In addition to these gifts to petitioner, testatrix made specific bequests, none larger than $50,000, to a church and various in-laws and friends. She bequeathed the remainder of her estate to respondents American Parkinsons Disease Association, Inc., Visiting Nurse Service of New York, and the Arthritis Foundation, "as a memorial to [her] beloved husband.”
 

 In paragraph thirteenth testatrix directed:
 

 "All estate, inheritance, and other death taxes, payable by reason of my death, shall be paid out of my estate as an expense of administration without apportionment or proration. This clause covers all testamentary and non-testamentary property whether passing before, on or after my death.”
 

 Testatrix died in August of 1990. At the time, petitioner was a resident of Germany and his legacy was subject by German
 
 *719
 
 law to an
 
 Erbschaftsteuer
 
 — literally translated as an "inheritance tax” — in the amount of $115,372. He asserted a claim against the decedent’s estate for payment of the
 
 Erbschaftsteuer.
 
 When the residuary beneficiaries objected, petitioner instituted this proceeding, as a beneficiary, seeking judicial construction of paragraph thirteenth of the will and demanding that the estate pay the German tax.
 

 The Surrogate determined that the
 
 Erbschaftsteuer
 
 was imposed on petitioner’s legacy solely because he was domiciled in a foreign country, and that absent an express statement in the will relieving beneficiaries from paying that foreign tax, petitioner should pay it. Finding nothing in the will unambiguously stating that petitioner should take his legacy free of the foreign tax, the Surrogate concluded testatrix did not intend that the
 
 Erbschaftsteuer
 
 be paid from the general estate. A divided Appellate Division affirmed, and the matter is before us as of right
 
 (see,
 
 CPLR 5601 [a]).
 

 Petitioner contends that the
 
 Erbschaftsteuer
 
 is an inheritance tax within the terms of paragraph thirteenth of the will and that it should be a cost of the administration of the estate. He contends further that even if the paragraph is ambiguous with respect to foreign taxes, the will, when read as a whole, clearly reveals testatrix’s intent that the
 
 Erbschaftsteuer
 
 should not be paid from his legacy. Respondents rely on several earlier decisions from the Surrogate’s courts in which the
 
 Erbschaftsteuer
 
 has been denominated an "acquirer tax” and hold that a beneficiary will not be exonerated from paying it absent a specific direction in the will addressing foreign taxes. Further, respondents contend that the statutorily expressed policy of protecting residuary beneficiaries requires the will to be construed against beneficiaries who choose to subject themselves to foreign taxes. Finally, respondents maintain that even if the
 
 Erbschaftsteuer
 
 is an inheritance tax within the meaning of paragraph thirteenth, the testatrix’s instruction that petitioner keep the bequeathed funds outside of Germany reveals her intent that the people of Germany should not benefit from her death and therefore, her general estate should not be required to pay the German tax.
 

 Analysis begins with the general rules of will construction which provide that a court is to determine and effectuate the intent of the testator and that in doing so, it must construe his or her words according to their ordinary and natural meaning
 
 (Matter of Walker,
 
 64 NY2d 354, 357-358;
 
 Matter of
 
 
 *720
 

 Cord,
 
 58 NY2d 539, 544;
 
 Matter of Wilhelm,
 
 60 AD2d 32, 36,
 
 affd
 
 46 NY2d 947). A testator who possesses testamentary capacity may dispose of property as he or she wishes and so long as the disposition is not contrary to law or public policy, a court may not undo the will merely because the testator’s desire does not comport with others’ notions of fairness and equity
 
 (Matter of Pepper,
 
 307 NY 242, 249;
 
 see also, Matter of Walker,
 
 64 NY2d, at 357,
 
 supra).
 

 In paragraph thirteenth, testatrix stated that her estate, as a cost of its administration, shall pay "[a]ll estate, inheritance, and other death taxes, payable by reason of my death.” The language could not be clearer:
 
 all
 
 taxes — estate, inheritance, or other death taxes — payable by reason of her death were to be paid by her general estate. As one Surrogate stated, the word "means exactly what it imports * * * all and nothing less than all”
 
 (Matter of Greenwald,
 
 186 Misc 654, 657). Such provisions exonerate preresiduary testamentary gifts from estate taxes
 
 (see, Matter of Shubert,
 
 10 NY2d 461, 467) and we conclude that this clause operates to exonerate preresiduary testamentary gifts — such as the bequest to petitioner — from inheritance taxes as well. The words clearly and unambiguously reflect the testatrix’s intent that her preresiduary beneficiaries, including petitioner, are to take their specific bequests free of all inheritance taxes, no matter where or by whom those taxes were imposed.
 

 Respondents contend, however, that the
 
 Erbschaftsteuer
 
 is an "acquirer tax,” not an inheritance tax, and that it should be paid by petitioner as the recipient of the legacy.
 
 [1]
 

 The
 
 Erbschaftsteuergesetz
 
 — the Inheritance Tax Law — was enacted by Germany on August 22, 1925
 
 (see,
 
 Gumpel, Taxation in Federal Republic of Germany § 4/2.1, at 605, n 1 [1969, 2d ed]). In the earliest cases involving the
 
 Erbschaftsteuer
 
 and tax exoneration clauses contained in the wills of New York testators, Surrogates did not characterize it as an "acquirer tax.” Rather, they looked to the language in the wills to determine if the testator intended that the legatee bear the burden of the tax collected by the German government
 
 (see, Matter of Muller,
 
 NYU, Nov. 14, 1929, at 801, col 2;
 
 Matter of
 
 
 *721
 

 Damschinsky,
 
 NYU, Mar. 6, 1930, at 2837, col 3;
 
 Matter of Brock,
 
 NYU, Apr. 2, 1930, at 32, col 1;
 
 Matter of Nordlinger,
 
 NYU, July 30, 1936, at 284, col 1). In each case, the Surrogates found language revealing an intention that the beneficiary should not pay the
 
 Erbschaftsteuer;
 
 indeed, in one case, the Surrogate gleaned that intent from a testator’s direction, similar to Mrs. Herz’s, that "all inheritance taxes” be paid by his estate
 
 (see, Matter of Damschinsky, supra).
 

 In 1934, the Westchester County Surrogate’s Court was asked to construe a will which directed that the residuary estate pay " 'any * * * inheritance * * * tax which shall become payable under any present or future law’ ”
 
 (Matter of Gotthelf,
 
 152 Misc 309, 310). The Surrogate found this clause to be ambiguous and received extrinsic evidence to determine the testatrix’s intention regarding payment of "the tax demanded under the German Reich law taxing the passing of property to nationals in Germany”
 
 (id.).
 
 The evidence revealed that the testatrix had begun drafting her will in 1924 — prior to the 1925 enactment of the
 
 Erbschaftsteuergesetz
 
 — but did not execute it until 1926. Apparently, testatrix and her draftsman had not discussed German taxes while the will was being prepared or when it was executed. The Surrogate concluded from this that the testatrix intended to exonerate legatees from the payment of taxes assessed only by the laws of this State or country, not those of a foreign country. In dicta, he arbitrarily designated the
 
 Erbschaftsteuer
 
 as an "acquirer tax,” describing it as "a tax against the person who takes the gift. It is not a true inheritance or legacy tax”
 
 (id.,
 
 at 311). From then on, Surrogates have referred to the
 
 Erbschaftsteuer
 
 as an "acquirer tax” and required wills to "clearly express * * * intent on the part of the testator to charge his general estate with the distinctive form of the German tax” before a foreign domiciliary would be exonerated from payment
 
 (Matter of Baer,
 
 161 Misc 797, 799;
 
 see, Matter of Jandorf,
 
 41 Misc 2d 712;
 
 see also, Matter of Williams,
 
 60 Misc 2d 952, 953).
 

 Thus, the ipse dixit characterization of the
 
 Erbschaftsteuer
 
 as an "acquirer tax” in
 
 Matter of Gotthelf (supra)
 
 had, by subsequent application of Surrogates, evolved into the rule applied by the Surrogate in this case — that the
 
 Erbschaftsteuer
 
 will not be paid from the general estate unless the testatrix has expressly stated that it should be. That rule was generally followed by Surrogates but this appears to be the first time the appellate courts have addressed the question.
 

 
 *722
 
 We have stated that an inheritance tax is "a tax on the privilege of receiving property on the death of another”
 
 (Matter of Vanderbilt,
 
 281 NY 297, 311,
 
 affd sub nom. Whitney v Tax Commn.,
 
 309 US 530). It is "laid upon the transfer of particular property to a particular person” and the amount and rate of the taxation may reasonably be determined by such factors as the amount which passes to the transferee and his relationship to the decedent
 
 (Farmers’ Loan & Trust Co. v Winthrop,
 
 238 NY 488, 496,
 
 cert denied
 
 266 US 633).
 

 Under the
 
 Erbschaftsteuergesetz,
 
 the transfer of property to a legatee is a taxable event
 
 (see,
 
 2 R ster, Business Transactions in Germany § 32.12 [2] [1991]; Gumpel,
 
 op. cit.,
 
 § 4/2.3 [a]). The
 
 Erbschaftsteuer
 
 is assessed against the inheritance or, as one authority has described it, the "enrichment” of the beneficiary
 
 (see,
 
 Killius, 962 T.M., Business Operations in Germany § XTV.A [1992];
 
 see also,
 
 2 R ster,
 
 op. cit.,
 
 § 32.12 [1]; Gumpel,
 
 op. cit.,
 
 § 4/2.1). The rate of taxation is graduated according to the net value of the property transferred and the degree of relation between the decedent and the beneficiary
 
 (see,
 
 2 R ster,
 
 op. cit,
 
 § 32.12 [3], [4] [a]; Gumpel,
 
 op. cit,
 
 §§ 4/ 2.1, 4/2.4, 4/2.5). Manifestly, then, the
 
 Erbschaftsteuer
 
 meets our definitions of an inheritance tax and it should be treated as such.
 

 Respondents’ primary objection to doing so appears to rest upon the fact that the foreign tax, and the liability of the estate for it, is based on the beneficiary’s domicile and, absent a rule providing that the testator must expressly exonerate beneficiaries from foreign taxes, residuary beneficiaries will be adversely affected by the personal and unpredictable decisions of legatees who decide to live in foreign jurisdictions that impose onerous inheritance taxes on domiciliaries. But testators can easily protect their residuary beneficiaries from the uncertainty of foreign taxes, if they so choose, by limiting the exoneration clause to domestic taxes
 
 (see, e.g., Matter of Pepper,
 
 307 NY 242, 244,
 
 supra
 
 [preresiduary dispositions exonerated from all taxes " 'imposed by any Commonwealth or State of the United States or Government of the United States’ ”]). In this case, testatrix knew petitioner lived in Germany and directed that her general estate pay all inheritance taxes. She did not limit that directive to domestic taxes, although she certainly could have done so if she wished, and it matters not that the drafter used "boilerplate” language in the will if such language clearly and unambiguously expressed her intention.
 

 
 *723
 
 Next, respondents contend that a rule requiring specific exoneration from foreign taxes is in accord with this State’s public policy of protecting residuary beneficiaries, usually the natural objects of the testator’s bounty, as expressed in EPTL 2-1.8. That provision directs equitable apportionment of estate and other death taxes unless the testator’s will directs against apportionment
 
 (see, Matter of Shubert,
 
 10 NY2d 461, 471,
 
 supra).
 
 But, the general policy furthered by EPTL 2-1.8 is subordinated to the wishes of the testator who directs otherwise in his or her will
 
 (see,
 
 EPTL 2-1.8 [a];
 
 Matter of Cord,
 
 58 NY2d 589, 545,
 
 supra).
 
 Moreover, the public policy of this State does not control the construction of a will, so long as the will is not contrary to public policy
 
 (see, Matter of Walker,
 
 64 NY2d 354,
 
 supra).
 
 Here, the testatrix expressed her intent as the statute permits; thus, the exoneration clause in her will is not contrary to a public policy
 
 (compare, Matter of Walker, supra
 
 [devisees of personal property, which included adoption decrees, could not use will provisions to escape the restrictions of statute that sealed adoption records]).
 
 [2]
 

 Moreover, the residuary beneficiaries in this case — charitable organizations all — are not immediate family members of the decedent, the "usual” residuary beneficiaries that the Legislature intended to protect by enacting a tax apportionment statute
 
 (see, Matter of Pepper,
 
 307 NY 242, 245,
 
 supra; see also,
 
 Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 2-1.8, at 143). Although we have declined to adopt different rules of construction depending on the character or relationship of the particular residuary beneficiary to the testator
 
 (see, Matter of Shubert,
 
 10 NY2d, at 474,
 
 supra),
 
 these residuary beneficiaries can hardly suggest that the tax should fall on petitioner because they, not he, are the natural objects of Ilse Herz’s bounty.
 

 Finally, even if we were to conclude that paragraph thirteenth is ambiguous, construction of the will as a whole
 
 *724
 
 reveals the testatrix’s intent that the tax be paid as a cost of administration
 
 (see, Matter of Carrner,
 
 71 NY2d 781, 785-786;
 
 Matter of Thall,
 
 18 NY2d 186, 192). Although the bequests in the residuary clause were made as a memorial to testatrix’s husband, petitioner was the only blood relative to take under the will and his was, by far, the most substantial legacy. Testatrix bequeathed him $250,000 and instructed him to keep $150,000 "for his own personal use” while directing that he use the remaining $100,000 to attend to her personal desires. If any funds remained after he did so, he was to keep them. Testatrix also gave petitioner all of her personal effects, including her "furniture, pictures, books, jewelry, wearing apparel, all photos, china, wine glasses, silver and carpets,” and she directed that her estate bear the expense of shipping the personalty to him. Finally, testatrix entrusted him with the upkeep of the graves of her parents and sister and she ensured that petitioner could attend to these special, personal testamentary provisions at no expense to himself.
 

 The clearly expressed intent that petitioner receive at least $150,000 free and clear is not undermined or diminished, as respondents contend, by the unexplained instruction that he keep the bequeathed funds outside of Germany; the
 
 Erbschaftsteuer
 
 would be imposed no matter where the funds were located
 
 (see,
 
 Gumpel,
 
 op. cit.,
 
 § 4/2.2).
 

 In sum, we conclude that the petition should be granted because the
 
 Erbschaftsteuer
 
 is an inheritance tax, the testamentary instruction regarding "all” inheritance taxes includes the foreign inheritance tax, and thus paragraph thirteenth of the will of Use Herz unambiguously reflects her intent that the
 
 Erbschaftsteuer
 
 imposed on petitioner York Winter by virtue of his German domicile be paid by the testatrix’s estate as an expense of administration.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and the matter remitted to Surrogate’s Court, Bronx County, for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 [1]
 

 . Petitioner does not contend that the
 
 Erbschaftsteuer
 
 is an "other” tax payable by reason of the testator’s death, and concluding as we do that the
 
 Erbschaftsteuer
 
 is an inheritance tax, we need not address whether the German tax should otherwise be considered within paragraph thirteenth of the will.
 

 [2]
 

 . Cases such as this, in which testatrix expressed her intent to shift all liability for the taxes on preresiduary bequests to her general estate, are to be distinguished from cases in which the residuary beneficiaries have disputed the effect of the antiapportionment clause upon their various residuary bequests
 
 (see, Matter of Shubert, supra; Matter of Pepper,
 
 307 NY 242, 246-247,
 
 supra; Matter of McKinney,
 
 101 AD2d 477). In the latter situation, we have stated that a testator’s antiapportionment intent must he unambiguously stated to clearly reflect the testator’s intent on the effect of spousal or charitable tax exemptions enjoyed by one of the residuary beneficiaries.