OPINION OF THE COURT
Joseph S. Mattina, S.
This matter is before the court on the petition of the executor for advice and direction in carrying out the wishes of Anna M. Beck under her will of October 20, 1989. The will has been admitted to probate but the City of Buffalo, through an affiliated agency, has taken issue with an apparently unusual pro *204 vision of the will. The parties made oral arguments and the Buffalo Urban Renewal Agency (BURA) submitted its affidavit.
Because of the unorthodox and novel nature of the testatrix’s testamentary direction and BURA’s insistence on invoking claims of public interest and policy, the court’s decision will embrace both its conclusions and reasoning. The facts and contentions present an issue of first impression.
Anna Beck died January 4, 1998 at age 97, having never married, without apparent heirs, and, according to the record, having devoted her life to her family homestead and her parish church. Her will is direct, sparse, and uncluttered, a reflection, it has been asserted, of the woman herself. The will has seven concise articles including the following unique direction: “fourth: I direct my executor to demolish my house at 923 Washington Street and charge the cost to my estate within one year of my death and offer the property to the City of Buffalo which by agreement has a right to purchase it for one hundred dollars ($100.00) and to pay the expense of closing.”
Her parish church, St. Louis Roman Catholic Church, Main and Edward Streets, Buffalo, is the residuary beneficiary. She had lived within the shadows of its spires all her life. The church and the executor seek to have her will’s provisions enforced. BURA would prefer to silence Anna Beck’s express directive under Article fourth. The unusual direction requires a close examination of the language employed to express the decedent’s testamentary intention under Article fourth, as well as exploration of the suggestion of potentially harmful whim or capriciousness in giving it effect.
The article entails two companion elements: one, the demolition of the homestead at 923 Washington Street; and two, the offer of the property purchase right to the City of Buffalo. The court examined each component closely within the context of the petition before it. The examination included a snapshot summary of Anna Beck’s attachment to her family homestead as contained in the report of the guardian ad litem assigned prior to probate.
Anna Beck’s paternal grandmother emigrated to Buffalo from Germany at about the time of the American Civil War. The house in question was reportedly built by the decedent’s grandfather in the post-Civil War era. Her father carried her mother over its threshold in the 1880’s. She and her only sibling, an unmarried sister Veronica Beck, were born and raised in the house which was within walking distance of St. Louis Church.
*205 Anna Beck and her sister demonstrated their affection for the homestead in more than mere words. In 1973, the city’s urban renewal agency brought a proceeding in Supreme Court for condemnation and demolition. The record before the court details the feistiness of the Beck sisters as they stood up against the wrecker’s ball to resist the city’s attempt to tear down their house in order to satisfy some planner’s urban renewal scheme. At the time, the house was sited at what was once known as 42 Ralph Place.
The Beck sisters refused to be bulldozed. After lengthy negotiations, a series of agreements was worked out between the Becks and the city. Anna Beck adhered to them after Veronica died. One agreement involved moving the house from Ralph Place to its present site. Another detailed Anna Beck’s intention to have the house demolished after her death and to give the city a purchase option on the lot. All parties signed the agreements.
The decedent further formalized her part of the deal via her will which, in part, states that the city “by agreement” (emphasis supplied) has a right to purchase the cleared lot.
The court’s responsibility in overseeing the administration of the decedent’s estate is rooted in the principle of implementing the decedent’s testamentary plan as determined from the words used within the four corners of the will (Matter of Cord, 58 NY2d 539, 544). That intent, where discernible, must be given effect unless contrary to law or public policy (Matter of Larkin, 9 NY2d 88). Statutes or public policy may limit the manner in which a testatrix may otherwise legally dispose of certain property (Matter of Walker, 64 NY2d 354, 358).
The court is keenly aware of the difficulties inherent in achieving an all-encompassing definition of public policy. In this matter, BURA expresses its belief that there is a “public and community interest” involved, but barely ventures beyond that expression. In fact, in its papers its own assertions diminish its claim. BURA acknowledges, for example, that there is nothing in city ordinances to prevent Anna Beck’s estate from carrying out her direction in Article fourth. BURA further admits that there is no special imprimatur on 923 Washington Street, no historical landmark designation upon the property or the locale to distinguish it within a public policy context. Moreover, the city’s own Preservation Board acknowledges in writing submitted on the record that it lacks jurisdiction over Anna Beck’s house.
While BURA argues that “the choice as to whether to demolish the house should be at the option of BURA,” it offers no *206 substantive explanation of the fact that it is the very same agency which contracted with the decedent to move the house and formally agreed to her intended demolition and purchase option. Valid contracts cannot be so cavalierly breached.
The court has endeavored to follow the city’s argument, despite its circuitous path. BURA concedes that it doesn’t “question the right of Miss Beck, in the abstract, to choose to demolish her house.” However, there is nothing abstract about the agreements reached between Anna Beck and BURA. And, there is nothing abstract about her will.
There is no unexplained testamentary direction to raze property and consequently injure both the estate and the immediate community, as was found untenable by the court in the Missouri case of Eyerman v Mercantile Trust Co. (524 SW2d 210, 213 [Mo]). Anna Beck clearly relied on the good-faith agreements she had negotiated with the city when the time came for her to express her intentions in her will.
In fact, her motive, however personal to her heritage, has compelling validity. In yet another case from a companion jurisdiction, National City Bank v Case W. Reserve Univ. (7 Ohio Op 3d 100, 369 NE2d 814, 817-818), the court believed that a testamentary direction to destroy a house failed to contravene public policy even where the motive was purely sentiment and intended to prevent a beloved home from debasement. This conclusion was reached in the face of a public policy argument much more forceful than what has been brought here.
There is some recognized merit in applying a public policy rationale to barring destruction of property by testamentary direction where the testator’s wishes are capricious and demonstrably harmful. (Matter of Pace, 93 Misc 2d 969 [Sur Ct 1977].) The merit was noted by the Court of Appeals in Walker (supra, at 359-360), but the specific distinctions of Pace, such as restrictive covenants, clearly differentiate it from the matter before this court.
In fact, it is fair to ask just who is capricious and arbitrary in the matter before us. BURA admits it agreed to the condition which the decedent expressed in her will. BURA says, in effect, it would rather not, and that had the incumbent administration been in office at the time the agreement was made, it would not have. Could-have’s and would-have’s are not the substance of a clearly joined issue of law.
The Beck home, which Anna Beck personally treasured and once fought to preserve from the city’s very own wrecking *207 crews, was, according to the record before the court, clearly titled to her. At her death, it was hers to dispose of as she intended.
Ironically, the agency which now claims to champion its preservation on the basis of an undefined public interest was the very same agency that once went to court seeking its demolition under the banner of urban renewal. That twist of fate is not lost on the court. Neither is the court willing to overlook the fact that to vitiate the decedent’s intent in Article fourth could result in financial harm to the residuary beneficiary who might well be burdened by the need to maintain an aging structure on limited resources. Such an impact would unquestionably frustrate Anna Beck’s testamentary plan. The clearly expressed provisions of a duly executed will cannot be abrogated based on anemic assertions of vacillating public interest. This court refuses to substitute a quasi-public interest for the enforcement of a properly executed and valid will.
Wherefore, the relief sought by the petitioner, an order granting the right to demolish 923 Washington Street, Buffalo, New York, under Article fourth of the last will and testament of Anna M. Beck and in performance of the agreement cited, is granted.