■ In the Matter of CHILD A. PARENT M. et al., Respondents; SPENCE-CHAPIN SERVICES TO FAMILIES & CHILDREN et al., Appellants. NEW YORK STATE OFFICE OF CHILDREN & FAMILY SERVICES, Nonparty Respondent. (Proceeding No. 1.) In the Matter of CHILD C. PARENT M. et al., Respondents; SPENCE-CHAPIN SERVICES TO FAMILIES & CHILDREN et al., Appellants. NEW YORK STATE OFFICE OF CHILDREN & FAMILY SERVICES, Nonparty Respondent. (Proceeding No. 2.) [44 NYS3d 109]—

Appeal from an order of the Surrogate's Court, Nassau County (Edward W. McCarty, III, S.), dated March 16, 2015. The order denied the motions of Spence-Chapin Services to Families and Children and Cradle of Hope Adoption Center, Inc., to dismiss, insofar as asserted against each of them, two proceedings which sought to vacate or "deny[ ] recognition" of a foreign adoption order.

Ordered that the order is reversed, on the law, with one bill of costs payable by the petitioners-respondents, the motions of Spence-Chapin Services to Families and Children and Cradle of Hope Adoption Center, Inc., to dismiss, insofar as asserted against each of them, the proceedings to vacate or deny recognition of the foreign adoption order are granted, and the proceedings are dismissed.

In 2006, the petitioners engaged the services of the respondents Spence-Chapin Services to Families and Children (hereinafter Spence-Chapin) and Cradle of Hope Adoption Center, Inc. (hereinafter Cradle of Hope), for assistance in adopting two children from Russia. The petitioners first learned about the subject children, referred to herein as Child A. and Child C., through a packet of information that was provided to them by Cradle of Hope. In July 2007, Child A. came to the United States and resided with the petitioners for a period of three weeks through a program offered by Cradle of Hope called "Bridge of Hope." In December 2007, the petitioners traveled to Russia to meet Child C., who was purportedly too young to participate in the Bridge of Hope program. In 2008, the petitioners returned to Russia to petition a Russian court for permission to adopt the children. The petitioners appeared before a Russian judge and other Russian government officials, and an order approving the adoptions (hereinafter the adoption order) was entered. The requisite visas were issued to the children by the United States Customs and Immigrations Services. According to the petitioners, shortly after they returned to the United States with the children, it became clear that the children suffered from severe behavioral and psychiatric problems. The petitioners sought help from various medical professionals to treat the children, but the children continued to exhibit mental health issues. In 2012, the children were placed in a psychiatric residential treatment facility, where they currently reside.

In June 2014, the petitioners commenced these proceedings seeking an order "denying recognition" of the adoption order pursuant to Domestic Relations Law § 111-c, or, in the alterna-

tive, vacating the adoption order pursuant to Domestic Relations Law § 114 (3) on the grounds of fraud and newly discovered evidence. Spence-Chapin and Cradle of Hope separately moved to dismiss the proceedings insofar as asserted against each of them on various grounds, including lack of subject matter jurisdiction. The Surrogate's Court denied the motions, and Spence-Chapin and Cradle of Hope appeal.

" 'The Surrogate's Court, as a court of limited jurisdiction, may exercise only the powers conferred upon it by statute and those powers incidental, inherent or necessary to do justice in a particular case to which its jurisdiction extends' " (*Matter of Tarlow*, 111 AD3d 751, 752 [2013]; *see Matter of Stortecky v Mazzone*, 85 NY2d 518, 524 [1995]). Moreover, " '[a]doption in this State is solely the creature of . . . statute, [and] the adoption statute must be strictly construed' " (*Matter of Jordan T. [Claudia B.T.]*, 97 AD3d 755, 755 [2012], quoting *Matter of Jacob*, 86 NY2d 651, 657 [1995]).

Domestic Relations Law § 111-c, entitled "[a]doption order from foreign country or foreign jurisdiction," provides:

"1. A final judgment of adoption granted by a judicial, administrative or executive body of a jurisdiction or country other than the United States shall have the same force and effect in this state as that given to a judgment of adoption entered by a court of competent jurisdiction of New York state, without additional proceedings or documentation provided:

"(a) either adopting parent is a resident of this state; and

"(b) the validity of the foreign adoption has been verified by the granting of an IR-3, IH-3, or a successor immigrant visa, for the child by the United States Citizenship and Immigration Services."

The statute further provides that an adoptive parent is not required to "petition a court in this state for adoption of the child provided the conditions of paragraphs (a) and (b) of subdivision one of this section are met" and that "[t]he foreign adoption shall be considered 'final' under the laws of New York state upon the satisfaction of paragraphs (a) and (b) of subdivision one of this section" (Domestic Relations Law § 111-c [2]).

Contrary to the petitioners' contention, the Surrogate's Court lacked authority under Domestic Relations Law § 111-c to deny recognition of the adoption order. Although a court may deny a petition for registration of a foreign adoption order on the ground that it does not satisfy the requirements set forth in Domestic Relations Law § 111-c (1) (*see* Domestic Relations

Law § 111-c [3]; *see e.g. Benjamin v NYC Dept. of Health & Mental Servs.*, 2009 NY Slip Op 31580[U], *5 [Sup Ct, NY County 2009]), the statute, by its plain language, was not intended to function as a means to abrogate a foreign adoption or deny recognition of a foreign adoption order on the basis of fraud. Rather, Domestic Relations Law § 111-c requires New York courts to recognize and give full legal force and effect to foreign adoption orders provided that certain conditions are met, and provides a mechanism for New York residents to validate foreign adoption orders.

The Surrogate's Court similarly lacked authority under Domestic Relations Law § 114 (3) to vacate the adoption order. That statute provides that, "[i]n like manner as a court of general jurisdiction exercises such powers, *a judge or surrogate of a court in which the order of adoption was made* may open, vacate or set aside such order of adoption for fraud, newly discovered evidence or other sufficient cause" (Domestic Relations Law § 114 [3] [emphasis added]). The plain language of that statute only empowers a New York court to vacate its own adoption orders, and not those issued in a foreign sovereign nation (*see Matter of Walker*, 64 NY2d 354, 360 [1985]).

Accordingly, the Surrogate's Court erred in denying the motions of Spence-Chapin and Cradle of Hope to dismiss the proceedings insofar as asserted against each of them.

The parties' remaining contentions need not be reached in light of our determination. Eng, P.J., Balkin, Sgroi and Barros, JJ., concur.