M. STELLA BLAIR et al., Respondents, *v.* WILLIAM L. LADUE, Appellant.

Third Department, November 16, 1961.

*Charles B. Honikel* for appellant.

*Jerry, Lewis & Harvey* (*Norman L. Harvey* of counsel), for respondents.

REYNOLDS, J. Respondents and appellant are owners of property in what is known as the "Ollivetti Addition" in the City of Plattsburgh. In 1934 the then owners entered into an agreement that all lots sold should contain the following restrictions:

"1. No building (including porches and piazzas) shall be erected on any of the premises above described within thirty-five (35') feet of the nearest line of the street on which such premises face.

"2. The premises above described and the building or buildings now or to be hereafter erected thereon shall not be used for purposes of commercial business or for any other purpose which will render or tend to render the locality undesirable for places of residence.

"3. No dwelling house shall be constructed upon said premises at a cost of less than $4,000.00, exclusive of the purchase price of the land upon which such dwelling house stands, exterior improvements or developments and the furnishings of said dwelling.

"4. The above restrictions and conditions, and each and all of them shall be deemed and are hereby made covenants running with the land and binding upon not only the present owners thereof but upon their grantees, heirs, executors, administrators, successors and assigns in perpetuity."

The deeds by both which respondents and appellant hold title contain these restrictions. In all 103 lots were mapped for the subdivision. By the commencement of the present action all of these lots except 9, including appellant's 4, have been developed with residences ranging in value from $17,000 to $35,000. No commercial or professional buildings have been constructed in the development, but one doctor residing in the development does have his office located in his home.

Appellant proposes to construct on his four lots a medical center which would provide facilities for five doctors and a parking lot for 15 cars. Appellants would occupy one suite of offices himself and lease the remainder. The center would also provide, on a rental basis, laboratory, X-ray and diathermy facilities to those physicians whose offices were located in the center. The proposed building would be 40 by 100 feet but would conform to the architecture of the other buildings in the area.

Respondents contend that the presence of the center would mean a substantial increase in traffic in the area, that as a result thereof the private atmosphere of the neighborhood would be invaded and that if the clinic is allowed, there would be no obstacle to the development of the remaining 5 lots for office space for other professionals.

Upon learning of the proposed clinic respondents engaged counsel who on their behalf immediately notified appellant that respondents felt the proposed clinic violated the restrictions contained in appellant's deed and that they would proceed to court, if necessary, to prevent any violation thereof. No reply was ever received from appellant to this protest. Instead, construction was commenced and at the time of the hearing before

the court below 90% of the exterior and 50% of the total building had been completed at a total cost to appellant of over $62,000.

Restrictive covenants are disfavored by the law to the extent that where the terms of an instrument permit more than one construction that construction which favors the free and unobstructed use of the property will be upheld (*Premium Point Park Assn.* v. *Polar Bar,* 306 N. Y. 507). However, the application of this afore-mentioned rule is subject to the general rule of construction that the intent of the parties is the paramount consideration (*Bovin* v. *Galitzka,* 250 N. Y. 228). While the terms of the restrictions are, perhaps, not completely clear, we agree with the court below that the restrictions when viewed as a whole evidence an intent on the part of the parties to limit the area to residential dwellings. We find no provisions of the present restrictions inconsistent with this view. On the other hand the specific use of the term '' dwelling house '' in restriction 3 lends considerable support thereto. In fact, any other construction would make an anomaly out of restriction 3. In addition the construction which the parties and their successors have placed on these covenants since 1934 is indicative of such an intent.

Nor do we agree with appellant's contention that the proposed clinic is not a commercial business but a professional practice. Admittedly the cases hold that a covenant which excludes '' business '' does not apply to the practice of his profession by a physician from his dwelling (*Iselin* v. *Flynn,* 90 Misc. 164). Appellant urges, however, that there is no difference between a physician using his residence as his office and the proposed clinic to be utilized by five physicians. We construe the decisions which sanction the practice of medicine by a physician in his residence to do so only so long as such practice is incidental to the use of the premises as his residence. It would be an extreme construction to hold that the practice of medicine as sanctioned in such decisions includes the right to operate a clinic on such a scale as proposed here by appellant.

As pointed out by the court below, any financial loss resulting from this determination is a direct result of appellant's proceeding to construct after appropriate warning by respondents of their position without first determining his rights.

The judgment should be affirmed, with costs to respondents.

Coon, J. P., Gibson, Herlihy and Taylor, JJ., concur.

Judgment affirmed, with costs to respondents.