| **Sampanthar v Walter** |
|:---:|
| 2024 NY Slip Op 31602(U) |
| May 8, 2024 |
| Supreme Court, Saratoga County |
| Docket Number: Index No. EF20222707 |
| Judge: Richard A. Kupferman |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

STATE OF NEW YORK
SUPREME COURT          COUNTY OF SARATOGA

---

**SUSAN SAMPANTHAR and
KESAVAN SAMPANTHAR,**

                              Plaintiffs,

            -against-

**SEAN WALTER and
CASEY WALTER,**

                              Defendants.

---

**DECISION & ORDER**

Index No.: EF20222707

Appearances:

Justin W. Gray, Esq.
Maynard, O'Connor, Smith & Catalinotto, LLP
6 Tower Place
Albany, New York 12203
*Attorneys for Plaintiffs*

Justin M. Grassi, Esq.
Jones Steves Grassi LLP
68 West Avenue
Saratoga Springs, New York 12866
*Attorneys for Defendants*

KUPFERMAN, J.,

The Horsey Hostess operates in the Town of Saratoga ("Town"). The business (owned by the defendant, Casey Walter) offers a variety of lessons (e.g., riding, grooming, and learning), and provides customers with the opportunity to enjoy a "horsey experience" and engage in some horse play. For the owner and the business' customers, the experience is calm and enlightening. Next to a photo of a horse gazing into your inner being with its large eyes, the owner writes on her website: The "non-judgmental, naturally mindful, and often loving presence [of horses] can lead you to a deeper understanding of yourself and others" (NYSCEF Document No. 53, Website).

1

But one person's dream can be another person's nightmare. For two of the neighbors (the plaintiffs in this action), their horsey experience has been unsettling. They consider it disruptive to their residential neighborhood, causing unpleasant smells, unsanitary runoff, and a reduction in their property value. They commenced this action seeking, among other things, to enjoin the operation of the business. They contend that the business violates certain restrictive covenants (first cause of action) and/or the zoning law (second cause of action).[1] After discovery, the parties filed competing motions for summary judgment.

Regarding the first cause of action, a party seeking to enforce a restrictive covenant must establish its application by clear and convincing evidence (see Kumar v Franco, 211 AD3d 1437, 1439 [3d Dept 2022]). "Where the language used in a restrictive covenant is equally susceptible of two interpretations, the less restrictive interpretation must be adopted" (id. [internal quotation marks and citations omitted]). Notwithstanding, "the intent of the parties is the paramount consideration" (Blair v Ladue, 14 AD2d 373, 375 [3d Dept 1961]; see Jennings Beach Ass'n v Kaiser, 145 AD2d 607, 608 [2d Dept 1988]; Rydberg v Jennings Beach Assn., 69 AD2d 816, 817 [2d Dept 1979], affd 49 NY2d 934 [1980]). Such intent must be ascertained from an examination of the document as a whole and not from a particular clause alone (see Bovin v Galitzka, 250 NY 228, 232 [1929]; Blair, 14 AD2d at 375). "In addition, the surrounding circumstances may, at times, become an important consideration in deciphering the intent, and interpreting the scope, of a restrictive covenant" (Birch Tree Partners, LLC v Windsor Digital Studio, LLC, 95 AD3d 1154, 1155-1156 [2d Dept 2012] [internal quotation marks, citations, and brackets omitted]; see McCord v Pichel, 35 AD2d 879, 880 [3d Dept 1970]).

---

[1] The plaintiffs' additional claims for nuisance, trespass, and negligence have since been resolved by the parties (see NYSCEF Document No. 33, So-Ordered Stipulation of Partial Settlement).

The restrictive covenants at issue were placed on the properties by the developer/seller. They are set forth in an amended declaration (the "DCRE") filed in the County Clerk's Office. The heart of the dispute concerns Sections 2b and 6 of the DCRE. Section 2b restricts the use of the properties for residential purposes only, while Section 6 provides an exception for a "home occupation." The DCRE relies on the definition of "home occupation" in the Town's zoning law. The zoning law defines a "home occupation" as requiring, among other things, the occupation/profession to be "customarily carried on in a dwelling unit" (Town Code, Chapter 400, Attachment 1 - Appendix A, Definitions). The examples of a "home occupation" in the zoning law include arts, crafts, and dancing; dressmaking; an office for a physician, dentist, lawyer, engineer, architect, agent, broker, or accountant; and other occupations of "a similar nature" (id.).

The Court agrees with the plaintiffs that the business is not a "home occupation." The business involves horse riding, grooming, and interaction. The horses are kept inside a stable (an accessory structure) and ridden/enjoyed outside, around the property (i.e., outside the dwelling). As such, the business is not customarily carried on in the dwelling and therefore fails to satisfy a key element of a "home occupation." In addition, the business is not similar in nature to any of the examples in the zoning law. None of the examples involve animals or any activities customarily carried on outside a dwelling.

Further, even assuming for the sake of argument that the zoning law permits a horse farm/business as of right or considers such to be a "home occupation," the business would still be prohibited under Section 5 of the DCRE. Section 5 prohibits the harboring or raising of any animals except for domestic animals that "are not kept and/or raised for commercial purposes." Despite defense counsel's zealous and creative attempts during oral argument to persuade otherwise, the Court finds that the horses are being kept for commercial purposes, even though

3

they are also being kept for the owner's personal enjoyment. The owner advertises the business and markets the horses to paying customers. The business further charges customers for the use and enjoyment of the horses. In fact, in the tax year preceding this litigation, the business reported $27,332 in gross receipts and $12,977 in net profit. This is precisely the type of commercial activity that the DCRE seeks to prohibit.

Even if any doubt existed regarding the intent of these provisions, the plaintiffs have provided an affirmation from the developer/seller of the properties which further supports their interpretation. The developer explains that the neighborhood was designed for buyers interested in "large, single-family, high-end homes, costing at least $500,000.00." The developer further explains that it intended for the DCRE to impose strict limitations upon the ability of the lot owners to keep animals or operate an open business. According to the developer, the presence of animals undermines the intended high-end residential character of the subdivision to the detriment of other lot owners. In addition, the developer explains that the home occupation exception was intended to apply narrowly to those occupations performed inside a home and involving low visibility. The developer opines that the business in this case is not permitted under the DCRE because it involves the commercial use of horses outside the dwelling and is highly visible to the plaintiffs.

Further, the defendants misplace reliance on the zoning/code enforcement officer's letter dated November 7, 2022. The letter does not determine that the business constitutes a "home occupation" or that it is permitted by the DCRE. To the contrary, the letter states that the business is permitted as a "horse farm" and expressly declines to render any opinion about the restrictive

4

covenants.[2] Moreover, even if the letter had opined that the business was a "home occupation," the business would still be prohibited under Section 5 of the DCRE (discussed above).

Similarly, the Court disagrees that the plaintiffs were required to pursue an administrative appeal from the zoning/code enforcement officer's letter as a prerequisite to seeking judicial enforcement of the DCRE. As explained above, the enforcement officer did not render any determinations relevant to the restrictive covenants and, as such, there was no determination to appeal on this issue. Further, this defense (the failure to exhaust administrative remedies) does not apply where the remedies sought in a plenary action are substantially different from the remedies available in an administrative proceeding (see Haddad v Salzman, 188 AD2d 515, 516 [2d Dept 1992], citing Little Joseph Realty v Town of Babylon, 41 NY2d 738 [1977]; see also Manuli v Hildenbrandt, 144 AD2d 789, 790 [3d Dept 1988]). As the administrative board responsible for hearing appeals could not have resolved the DCRE claim (and the Town's enforcement of its zoning laws was discretionary), the Court disagrees that the plaintiffs' failure to pursue an administrative appeal precludes the plaintiffs from seeking to enforce the DCRE.

Accordingly, the Court agrees that the horse farm/business is prohibited under the DCRE. As such, the Court grants the injunctive relief requested in the first and sixth causes of action to the extent that the defendants are prohibited from operating the horse farm/business on their property.

---

[2] Previously, during a meeting before the Town's Planning Board, the zoning/code enforcement officer commented that the business was "more a home occupancy business" than an academy (Meeting Minutes, dated August 24, 2022). The Court similarly does not consider these comments as an administrative resolution of the "home occupation" issue. Aside from its equivocal nature, the comments were made orally during ongoing proceedings, and they were also later amended/superseded by the zoning/code enforcement officer's letter dated November 7, 2022.

5

[* 5]

This decision renders the second cause of action (zoning law) as moot and unnecessary. In particular, the second cause of action seeks the following remedies: injunctive relief to prohibit the business from operating; monetary damages for the alleged reduction in the value of the plaintiffs' property based on the business' operation; and a declaratory judgment. As discussed above, on the two other causes of action, the Court has already awarded injunctive relief to prohibit the business from operating on the property. The plaintiffs' request for this same relief in the second cause of action is now moot. In addition, given the injunctive relief awarded, the plaintiffs' property value has now been restored. The Court further declines to grant the plaintiffs' request for a declaratory judgment regarding the zoning law. Such a declaration would not be useful or necessary given the injunctive relief awarded (see James v Alderton Dock Yards, Ltd., 256 NY 298, 305 [1931]; see also CPLR 3001; Equitable Leasing, Inc. v Maguire, 36 AD2d 1020, 1020 [4th Dept 1971]).

The Court has considered the parties' remaining contentions and finds them to be either unpersuasive or rendered academic.

It is therefore,

**ORDERED**, that the defendants' motion seeking summary judgment in their favor (Motion No. 1) is **DENIED**; and it is further

**ORDERED**, that the plaintiffs' motion seeking summary judgment in their favor (Motion No. 2) is **GRANTED** on the first and sixth causes of action and the defendants' counterclaim is hereby **DISMISSED**; and it is further

**ORDERED**, that the plaintiffs' request for a declaratory judgment on the first cause of action is **GRANTED** and the Court hereby declares that the defendants' operation of the horse

6

[* 6]

farm/business on their property in the Town of Saratoga is in violation of the DCRE; and it is further

**ORDERED**, the defendants are hereby enjoined and prohibited from continuing to carry on the horse farm/business on their property in the Town of Saratoga while the restrictive covenants remain effective; provided, however, that nothing herein requires the defendants to remove any improvements or prohibits them from owning or keeping the horses on their property; and it is further

**ORDERED**, that the plaintiffs' motion seeking summary judgment (Motion No. 2) on the second cause of action is **DENIED** as moot and the second cause of action is hereby **DISMISSED**, without prejudice.

This shall constitute the Decision & Order of the Court. The Court is hereby uploading the original Decision & Order into the NYSCEF system for filing and entry by the County Clerk.

So-Ordered.

Dated: May 8, 2024
at Ballston Spa, New York

HON. RICHARD A. KUPFERMAN
Justice Supreme Court

Papers Considered:
NYSCEF Document Numbers: 36-68

7